## PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.

JOHN C. PHILLIPS, JR.
ROBERT S. GOLDMAN
LISA C. MCLAUGHLIN
JAMES P. HALL
DAVID A. BILSON
MEGAN C. HANEY

ATTORNEYS AT LAW
PENNSYLVANIA AVE. AND BROOM ST.
1200 N. BROOM STREET
WILMINGTON, DE 19806
————
(302) 655-4200 (P)
(302) 655-4210 (F)

May 13, 2019

**VIA CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

**REDACTED - PUBLIC VERSION**

Re:   *Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*
C.A. No. 17-1623-LPS-CJB

Dear Judge Burke:

Dr. Angiouli provided detailed, responsive testimony for over seven hours. Dissatisfied with his testimony, Guardant seeks a court order compelling him to give different answers that mirror Guardant's infringement theories. Guardant's motion is baseless on its face.

### Angiouli Explained In Detail How The Source Code Works

Guardant claims that "Angiouli refused to do anything more than paint a picture of PGDx's source code as a black box that takes in many 'pieces of data' and then 'counts' or 'scores' them to spit out better data." D.I. 231 at 3. Nothing could be further from the truth. Angiouli explained in detail how the source code works, including how it uses barcodes, and demonstrated that PGDx's source code takes a fundamentally different approach from that in Guardant's claims.

Angiouli explained that, rather than collapse sequence reads to create consensus sequences,

———————————————

[1] All emphasis is added unless otherwise noted.

The Honorable Christopher J. Burke                                                    Page 2
May 13, 2019



**Guardant's Arguments Are Meritless**

  In an attempt to show Angiouli's answers were evasive, Guardant repeatedly quotes testimony where Angiouli responded to highly repetitive questioning by referring to his earlier explanations.  For example, Guardant's own block quote states "[A]s I've been describing… We saw from the schematic they're in the data….  As I've been saying…." *Id.* at 2 (quoting Ex. 1 at 130:12-131:13).  Guardant repeats this tactic throughout its letter.

  Guardant also points to Angiouli's repeated use of the term "pieces of data" to claim he was "coached to obscure and deflect" and to "conceal and misdirect."  D.I. 231 at 3, 4.  But the transcript reveals that the first person to use that phrase at the deposition was ***Guardant's counsel***.  *See* Ex. 1 at 85:20 (using "pieces of data" and "piece of data" in a single question).  Counsel used this term numerous times during the deposition.  *See, e.g., id.* at 106:19, 107:8; 147:25; 148:19; 149:10.  Guardant cannot blame PGDx for Angiouli's adoption of a term Guardant first used.

  Guardant complains that "Angiouli should have…explained, for instance, that PGDx uses barcodes" so a "consensus can be generated."  D.I. 231 at 3.

The Honorable Christopher J. Burke                                                    Page 3
May 13, 2019

infringement" and to "explore" PGDx's "noninfringement positions." D.I. 231 at 4. But Angiouli
is not PGDx's noninfringement expert. He was there to provide factual testimony.



Guardant also claims Angiouli refused to answer what Guardant describes as a "precise"
question: does "PlasmaSelect 64 perform[] the step of barcoded fragments being differentiated
based on the combination of their exogenous barcode and their endogenous barcode…." *Id.* at 4.
The question was hardly precise. Indeed, Guardant's letter omits the rest of the question:
"…resulting from the genomic positions of fragment ends of each cell-free DNA molecule?" Ex.
1 at 228:6-14. Guardant also omits that it was asking about whether PGDx performs a step
described in a *patent application*. *Id.* Angiouli, who is not an expert in this case, struggled with
"interpreting the wording" and the fact the statement was "talking about multiple components of
a system, some of which are wet chemistry," which is not Angiouli's expertise. *Id.* at 229:1-25.
Nonetheless, Angiouli *answered* the question.

Guardant's case law is inapposite. The witness in *Oy v. Veritzon Services Corp.*, 2013 WL
5675516 at *2 (D. Del. 2013), was unprepared to discuss certain 30(b)(6) topics. Guardant does
not argue that Angiouli was unprepared. The witness in *State Farm Mutual Automobile Insurance,
Co., v. New Horizont, Inc.,* 250 F.R.D. 203, 214 (E.D. Pa. 20008), was instructed not to answer
questions. Here, Angiouli answered *all* of Guardant's questions and explained in detail how
barcodes are "used" and why, from his perspective as a software engineer, they are "useful." *See,
e.g.,* Ex. 1 at 104:8-25. Guardant is not entitled to different answers just because it did not like his
testimony. Guardant never identifies any *factual information* Angiouli failed to provide, or what
answers he would have to give to comply with the order Guardant seeks. Instead, Guardant
primarily complains that Angiouli did not *characterize* the facts in a way that mirrors Guardant's
theories. Nothing requires a witness to do that. Guardant also attacks Angiouli's credibility, but
credibility is a jury issue, not a basis to compel different answers.

Guardant references the parties' previous disputes to claim that PGDx has "repeatedly
attempted to conceal the basis for its assertions about its source code." D.I. 231 at 1. That assertion
is baseless. PGDx invited Guardant to inspect its source code from the outset of this case and
PGDx explained its noninfringement positions with specific citations to source code in August of
2018. D.I. 171, Ex. 14. The Court agreed with PGDx that Guardant's print-out requests were
initially unsupported and the Court ordered Guardant to address PGDx's source code in its
infringement contentions. D.I. 89, 179. PGDx temporarily delayed Angiouli's deposition because
it was concerned that, without Guardant fully disclosing its contentions, Angiouli would provide

The Honorable Christopher J. Burke                                                    Page 4
May 13, 2019

testimony Guardant contends is insufficient. That is precisely what has happened. Indeed, despite this Court's order, D.I. 179, Guardant's final infringement contentions merely cite source code with *no* explanation, whatsoever, of how the code practices the claims. *See* Ex. 2.

**Guardant Should Not Blame Angiouli For Its Own Failures**

To the extent any of Angiouli's answers were truly deficient, Guardant can only blame itself. First, Angiouli could not have anticipated Guardant's intense focus on barcodes. To date, the central issue in this case has been whether PGDx's source code collapses sequence reads to create a consensus sequence.  Angiouli could not have anticipated that. As discussed, Guardant has still not explained how PGDx's source code infringes. Moreover, none of the 30(b)(6) topics on which Angiouli was designated even mention "barcodes." Exs. 4, 5. Ex. 1 at 42:17-21. PGDx designated Dr. Sausen to testify on Guardant's "barcodes" topics. *See* Ex. 4 at Topics 18-19; Exs. 6; Ex. 7.

Second, if Guardant wanted to know whether Angiouli agreed with Guardant's positions, Guardant could have simply stated the positions and asked if Angiouli agreed. PGDx's counsel specifically suggested that Guardant take this approach during the deposition. Ex. 1 at 114:7-23. But Guardant's counsel refused. As a result, it was unclear to Angiouli, and even to PGDx's counsel, what specific testimony or information Guardant was trying to elicit.

Third, Guardant repeatedly refused to let Angiouli reference source code, despite Angiouli's numerous requests. *See, e.g., id.* at 105:18-19 ("So I'm happy to go through, you know, more detail in the software if --- if -- you know, if this isn't clear enough, but…"), 107:24 ("this would be clearer if we went through the software, but…."), 114:1-3 ("I'm happy to go through the software and provide a description of the procedure in detail, but…"). Indeed, after telling this Court it needed Angiouli's testimony to understand PGDx's source code, Guardant implored Angiouli to *ignore* the code. *Id.* at 104:6-9 ("A. I believe I understand the question. You know, as far as the software's concerned -- Q. I am *not interested* as far as the software is concerned.").

Finally, to the extent a particular answer was truly nonresponsive, Guardant could have conferred with PGDx during the deposition and, if necessary, the parties could have contacted the Court. Instead, after several hours with no objections, Guardant's supervising attorney, Derek Walter (who was not taking the deposition), threatened to "contact the Court." *Id.* at 110:19-21.[2] Guardant then resumed and completed its questioning without keeping the deposition open or stating it would seek relief, leading PGDx to believe the issue was resolved. At the end of the deposition, PGDx's counsel asked: "Does that conclude your questioning?" *Id.* at 251:17. Guardant's counsel responded: "Yes that concludes my questioning." *Id.* at 251:18-19.

---

[2] To make matters worse, Mr. Walter interrupted the questioning attorney and waved his hands, attempting to intimidate Angiouli. Ex. 3; Ex. 1 at 110.

The Honorable Christopher J. Burke                                    Page 5
May 13, 2019

Respectfully submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (No. 110)

cc:     All counsel of record (via CM/ECF & email)

# EXHIBIT 1































































# EXHIBIT 2















# EXHIBIT 3

| | |
|---|---|
| **From:** | Stephen.Larson |
| **To:** | Pistritto, Christopher; Knobbe.PGDx; Jack Phillips; David A. Bilson |
| **Cc:** | Guardant Health II Service; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com |
| **Subject:** | RE: Guardant v. PGDx: Request for Meet and Confer |
| **Date:** | Tuesday, April 23, 2019 6:18:00 PM |

Chris,

Dr. Angiouli fully answered Guardant's vague and flawed questions regarding, e.g., the "strategy" and "usefulness" of barcodes in PlasmaSelect 64.  Not liking Dr. Angiouli's answers, Guardant asked the same questions over and over again, apparently hoping for a different answer, far beyond the point of abuse.  To make matters worse, Guardant's attorney, Derek Walter, who was not even taking the deposition, repeatedly waved his hands and even interrupted your questioning in an attempt to intimidate Dr. Angiouli.  As PGDx stated repeatedly on the record, to the extent Guardant was trying to establish something specific, it should have simply stated the particular proposition and asked Dr. Angiouli whether he agreed or disagreed with that proposition.  Instead, Guardant kept asking the same flawed and open-ended questions and kept receiving the same fully responsive answers.  That Dr. Angiouli did not provide the answers Guardant was seeking did not justify Guardant' abusive questioning and certainly does not justify any meet and confer.  Indeed, at the end of the deposition, Guardant confirmed it had no more questioning and did not keep the deposition open.  Thus, we fail to understand why Guardant is seeking a meet and confer.  Nonetheless, we are available at 2 pm PST tomorrow to further discuss.

Thanks,

Steve

**From:** Pistritto, Christopher <Christopher.Pistritto@weil.com>
**Sent:** Tuesday, April 23, 2019 4:05 PM
**To:** Knobbe.PGDx <Knobbe.PGDx@knobbe.com>; Jack Phillips <jcp@pgmhlaw.com>; David A. Bilson <dab@pgmhlaw.com>
**Cc:** Guardant Health II Service <Guardant.Health.II.Service@weil.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com
**Subject:** Guardant v. PGDx: Request for Meet and Confer

Counsel,

During his deposition today, Dr. Angiouli repeatedly provided non-responsive answers to counsel's questioning.  As stated by counsel both during as well as at the conclusion of his deposition, Dr. Angiouli's conduct was not acceptable.  As such, we request your availability for a meet and confer tomorrow.

Thank you,
Chris



**Christopher Mehta Pistritto**

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Christopher.Pistritto@weil.com
+1 650 802 3925 Direct
+1 650 802 3100 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 17-1623-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| PERSONAL GENOME DIAGNOSTICS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT PERSONAL GENOME DIAGNOSTICS, INC.'S OBJECTIONS TO
GUARDANT HEALTH, INC.'S NOTICE OF DEPOSITION PURSUANT TO
FED. R. CIV. P. 30(b)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendant Personal Genome Diagnostics, Inc. ("PGDx"), through its undersigned counsel, responds and provides objections to the Notice of Deposition of Personal Genome Diagnostics, Inc. Pursuant to Rule 30(b)(6) propounded by Plaintiff Guardant Health, Inc. ("Guardant") dated January 18, 2019, on the following grounds:

**GENERAL OBJECTIONS**

PGDx asserts each of the following general objections to Guardant's Notice of Deposition and the topics listed therein (the "Topics"). In addition to these general objections, PGDx also makes objections to specific topics, including objections that are not generally applicable to all topics. By setting forth such specific objections, PGDx does not intend to limit or restrict its general objections.

1.      PGDx objects to the Notice of Deposition and each and every Topic to the extent that they seek to impose any obligations beyond those set forth in the Federal Rules of Civil Procedure (the "Federal Rules") or in the Local Rules of the United States District Court for the

District of Delaware (the "Local Rules").

2.      PGDx objects to the Topics to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other applicable privilege or immunity.  The specific objections stated below on the grounds of attorney-client privilege, and/or work product in no way limit the generality of this objection.  Nothing contained in these responses is intended to be nor should be considered a waiver of any attorney-client privilege, work product protection, the right of privacy, or any other applicable privilege or doctrine, and to the extent that any request may be construed as calling for disclosure of information protected by such privileges or doctrines, a continuing objection to each and every such request is hereby interposed.

3.      PGDx objects to the Topics as vague and ambiguous and not properly tailored as Rule 30(b)(6) topics because they fail to state with particularity the matter on which examination is requested.  As stated in its specific responses, to the extent that PGDx is able to understand the specific topic raised by Guardant, PGDx will identify and prepare a witness on the topic as understood by PGDx.

4.      PGDx objects to the Topics to the extent that they call for legal conclusions, legal contentions, or expert testimony.

5.      PGDx objects to the Topics to the extent that they seek information that is not relevant to any party's claim or defense and to the extent they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

6.      PGDx objects to the Topics to the extent that the answer to any topic may be derived or ascertained from publicly available documents or documents and things produced by the parties, where the burden of deriving or ascertaining the responsive information from those documents is substantially the same for Guardant as it is for PGDx.

7.      PGDx objects to the Topics to the extent that they seek information not known to PGDx or within PGDx's possession, custody, or control.  By stating that it will produce a witness competent to testify on a topic, PGDx does not represent that it has any relevant information on that topic, but merely that a designee will testify to any corporate knowledge obtained through a reasonable investigation.

8.      PGDx objects to the Topics to the extent they are vague and ambiguous.

9.      PGDx objects to the Topics to the extent that they are unlimited in time and/or seek information from time periods that are not relevant to this action.

10.     PGDx objects to the definition of "PGDx" because it seeks information from predecessors, successors, affiliates, subsidiaries, parents, assignees, joint venturers, partners, and all other persons or entities acting or purporting to act on their behalf that is not in the possession of PGDx.  As used herein, PGDx refers to Personal Genome Diagnostics, Inc.

11.     PGDx objects to the definition of "PGDx Accused Product" to the extent it encompasses products other than PlasmaSELECT64.  In providing responsive testimony, PGDx will interpret "PGDx Accused Product" and "Accused Product" as PlasmaSELECT64.  PGDx will not provide corporate testimony regarding any other PGDx product, including elio Plasma Resolve.

12.     PGDx's responses are made without waiver of any objection to the admissibility in evidence of the information provided in response to the Topics and without waiver of any objection

to the use of any videotaped deposition or transcript at trial.

13.    PGDx reserves the right to object at the deposition to any question asked on the grounds set forth in these General Objections, the specific grounds individually listed in response to each deposition topic below, or any ground available to PGDx at the time of the deposition.

Without waiving the foregoing general objections, PGDx hereby provides the following specific objections to the Topics identified in Guardant's Notice of Deposition:

## OBJECTIONS TO MATTERS FOR EXAMINATION

**TOPIC NO. 1:**

All facts and circumstances relating to PGDx's efforts to monitor any of the Patents-in-Suit and Related Patents.

**RESPONSE TO TOPIC NO. 1:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx does not intend to produce a witness to testify concerning this topic.

**TOPIC NO. 2:**

PGDx's first awareness of the Patents-in-Suit and Related Patents.

**RESPONSE TO TOPIC NO. 2:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx

further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx does not intend to produce a witness to testify concerning this topic.

**TOPIC NO. 3:**

Any proposed design-arounds to the Patents-in-Suit and Related Patents.

**RESPONSE TO TOPIC NO. 3:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic to the extent that it seeks information that may be readily obtained from documents and things already produced by the parties.  PGDx further objects to this topic to the extent it seeks information not in PGDx possession, custody, or control.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 4:**

Any request for review of any Patent-in-Suit or Related Patent by any foreign patent office or tribunal, including without limitation all documents related to any foreign litigations or European opposition proceedings.

**RESPONSE TO TOPIC NO. 4:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses

asserted in the case and not proportional to the needs of the case.  PGDx does not intend to produce a witness to testify concerning this topic.

**TOPIC NO. 5:**

All facts and circumstances relating to PGDx involvement in the sale, acquisition, or licensing of any intellectual property related to cancer testing or cell-free DNA, including the decision to license or purchase any patent related to cancer testing or cell-free DNA.

**RESPONSE TO TOPIC NO. 5:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx further objects to this topic to the extent that it seeks information that may be readily obtained from documents and things already produced by the parties.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 6:**

All facts and circumstances relating to the success, failure and/or decision to continue or discontinue marketing and development of any previous cancer test created by PGDx.

**RESPONSE TO TOPIC NO. 6:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx

further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx does not intend to produce a witness to testify concerning this topic.

**TOPIC NO. 7:**

All facts and circumstances relating to PGDx's decision to focus on development of the PGDx Accused Product, including when any such decision was made, the basis for that decision and the percent of the budget allocated for the project over time.

**RESPONSE TO TOPIC NO. 7:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 8:**

All facts and circumstances relating to any similarities and/or differences between the PGDx Accused Product and the Guardant Product.

**RESPONSE TO TOPIC NO. 8:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses

asserted in the case and not proportional to the needs of the case. PGDx further objects to this topic to the extent it seeks information not in PGDx possession, custody, or control.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning any similarities and/or differences between the accused features of the PGDx Accused Product and the Guardant Product.

**TOPIC NO. 9:**

Any efforts made by PGDx to commercialize the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 9:**

PGDx incorporates by reference the general objections set forth above. PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity. PGDx objects to this topic as vague and ambiguous in its use of the phrase "efforts . . . to commercialize." PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 10:**

The date of first sale of the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 10:**

PGDx incorporates by reference the general objections set forth above. PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case. PGDx further objects to this topic because it seeks information more properly sought through written discovery requests.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 11:**

All facts and circumstances related to the design and operation of the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 11:**

PGDx incorporates by reference the general objections set forth above. PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the design and operation of the accused features of the PGDx Accused Product.

**TOPIC NO. 12:**

All facts and circumstances relating to PGDx's decision to utilize blood plasma as a source of DNA (as opposed to tumor tissue) in the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 12:**

PGDx incorporates by reference the general objections set forth above. PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity. PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 13:**

All aspects of the bioinformatics analysis used in the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 13:**

PGDx incorporates by reference the general objections set forth above.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the bioinformatics analysis in the PGDx Accused Product.

**TOPIC NO. 14:**

The processes used in each Accused Product to reduce error rate associated with detection of genomic alterations potentially associated with cancer from cell-free DNA, including without limitation, all processes used by the Accused Products to "exclude alignment and sequencing artifacts." See D.I. 1-3 at p. 10.

**RESPONSE TO TOPIC NO. 14:**

PGDx incorporates by reference the general objections set forth above.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the Accused Product used to reduce error rate associated with detection of genomic alterations potentially associated with cancer from cell-free DNA.

**TOPIC NO. 15:**

The process by which the PGDx Accused Product identifies candidate genomic alterations potentially associated with cancer.

-10-

**RESPONSE TO TOPIC NO. 15:**

PGDx incorporates by reference the general objections set forth above.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the process by which the PGDx Accused Product identifies candidate genomic alterations potentially associated with cancer.

**TOPIC NO. 16:**

The process by which the PGDx Accused Product aligns sequence reads to a reference, including but not limited to template sequences or a reference sequence.

**RESPONSE TO TOPIC NO. 16:**

PGDx incorporates by reference the general objections set forth above.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the process by which the PGDx Accused Product aligns sequence reads to a reference.

**TOPIC NO. 17:**

The source code used in the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 17:**

PGDx incorporates by reference the general objections set forth above.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the source code used in the PGDx Accused Product.

**TOPIC NO. 18:**

All aspects of the barcodes or indices used to tag or label DNA in the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 18:**

PGDx incorporates by reference the general objections set forth above.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the barcodes or indices used to tag or label DNA in the PGDx Accused Product.

**TOPIC NO. 19:**

The process used to barcode DNA samples in the PGDx Accused Product, including without limitation the types and sequence information of barcodes used and laboratory protocols for barcoding DNA.

**RESPONSE TO TOPIC NO. 19:**

PGDx incorporates by reference the general objections set forth above.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features of the process used to barcode DNA samples in the PGDx Accused Product.

**TOPIC NO. 20:**

All aspects of preparing a sample from blood draw to sequencing on a particular sequencing platform for the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 20:**

PGDx incorporates by reference the general objections set forth above.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted

in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the accused features relating to preparing a sample from blood draw to sequencing on a particular sequencing platform for the PGDx Accused Product.

**TOPIC NO. 21:**

The laboratory standard operating procedures by which the Accused Product is carried out in PGDx's CLIA laboratory facility.

**RESPONSE TO TOPIC NO. 21:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx further objects to this topic to the extent that it seeks information that may be readily obtained from documents and things already produced by the parties.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning the laboratory standard operating procedures relating to the accused features of the Accused Product.

**TOPIC NO. 22:**

All aspects of the PGDx Accused Product that PGDx contends forms a basis for non-infringement of the Patents-in-Suit.

**RESPONSE TO TOPIC NO. 22:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to

this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity. PGDx further objects to this topic because it seeks information more properly sought through written discovery requests. PGDx further objects to this topic because it seeks legal conclusions, legal contentions, or expert testimony. Further, PGDx has already offered to designate one or more witnesses to testify concerning the design and operation of the accused features of the PGDx Accused Product, as stated above in response to Topic No. 11. PGDx does not intend to produce a witness to testify concerning this topic.

**TOPIC NO. 23:**

The detailed financial information related to the PGDx Accused Product, including without limitation:

a.) The number of units sold;

b.) All fixed and variable costs and expenses incurred by PGDx in connection with the PGDx Accused Product;

c.) PGDx's net and gross revenue derived from the PGDx Accused Product; and d.) The quantity of sales direct to hospitals and the quantity of reimbursements through insurance providers.

**RESPONSE TO TOPIC NO. 23:**

PGDx incorporates by reference the general objections set forth above. PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case. PGDx further objects to this topic to the extent that it seeks information that may be readily obtained from documents or properly sought through written discovery requests.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 24:**

The details of any negotiations with insurance providers for reimbursement for sales of the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 24:**

PGDx incorporates by reference the general objections set forth above. PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity. PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 25:**

Customer acceptance for, demand for, or complaints relating to the PGDx Accused Product.

**RESPONSE TO TOPIC NO. 25:**

PGDx incorporates by reference the general objections set forth above. PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity. PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case. PGDx further objects to this topic as vague and ambiguous in its use of the phrase "customer acceptance for."

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning customer demand for its product.

**TOPIC NO. 26:**

All facts and circumstances, relating to the type, amount, factual bases and support for all damages that PGDx believes constitute a reasonable royalty or other appropriate measure of relief, should liability be established, including:

a.) The method used to calculate the reasonable royalty rate; b.) The data used in such calculations;

c.) The source of the data;

d.) The royalty rate so calculated;

e.) The base to which the royalty rate is to be applied.

**RESPONSE TO TOPIC NO. 26:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic because it seeks legal conclusions, legal contentions, or expert testimony.  PGDx does not intend to produce a witness to testify concerning this topic.

**TOPIC NO. 27:**

All facts and circumstances relating to marketing of the PGDx Accused Product, including any marketing plan, market analysis, and sales forecasts.

**RESPONSE TO TOPIC NO. 27:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work

product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 28:**

All facts and circumstances relating to PGDx's attempts to monitor potential competitors including the sales and marketing of the Guardant Product.

**RESPONSE TO TOPIC NO. 28:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx objects to this topic as vague and ambiguous in its use of the phrase "attempts to monitor."

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 29:**

Communications by PGDx with investors or potential investors regarding comparisons between the PGDx Accused Product and the Guardant Product and the validity or potential infringement of the Patents-in-Suit.

**RESPONSE TO TOPIC NO. 29:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to

this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 30: [INCORRECTLY NUMBERED 31]**

The policies and procedures for PGDx's record keeping, including without limitation PGDx's document destruction policy.

**RESPONSE TO TOPIC NO. 30:**

PGDx incorporates by reference the general objections set forth above.  PGDx objects to this topic to the extent it seeks information protected by the attorney client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 31: [INCORRECTLY NUMBERED 32]**

PGDx's organizational structure.

**RESPONSE TO TOPIC NO. 31:**

PGDx incorporates by reference the general objections set forth above.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx further objects to this topic because it seeks information more properly sought through written discovery requests.

Subject to and without waiving the foregoing objections, PGDx will designate one or more witnesses to testify concerning this topic.

**TOPIC NO. 32: [INCORRECTLY NUMBERED 33]**

The identity, location, authenticity, and business record status of documents and other tangible things constituting evidence relating to the categories set forth in Topics 1 through 33 above.

**RESPONSE TO TOPIC NO. 32:**

PGDx incorporates by reference the general objections set forth above.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted in the case and not proportional to the needs of the case.  PGDx further objects to this topic because it seeks information more properly sought through written discovery requests.  PGDx further objects to this topic on the grounds that it is overly broad and unduly burdensome, particularly in that it calls for a witness to testify regarding each of potentially tens of thousands of documents and things.

Subject to and without waiving the foregoing objections, PGDx will designate the same witnesses it will designate for each of the topics above as it relates to this topic.

**TOPIC NO. 33: [INCORRECTLY NUMBERED 34]**

The identity and location of witnesses knowledgeable about the categories set forth in Topics 1 through 33 above.

**RESPONSE TO TOPIC NO. 33:**

PGDx incorporates by reference the general objections set forth above.  PGDx further objects to this topic as seeking information that is not relevant to any claims or defenses asserted

in the case and not proportional to the needs of the case.  PGDx further objects to this topic because

it seeks information more properly sought through written discovery requests.

Subject to and without waiving the foregoing objections, PGDx will designate the same

witnesses it will designate for each of the topics above as it relates to this topic.

Of Counsel:

Joseph R. Re
Stephen W. Larson
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Joe.re@knobbe.com
Stephen.larson@knobbe.com

William R. Zimmerman
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
202-640-6412 - Direct
Tel: (202) 640-6400
Fax: (202) 640-6401
Bill.Zimmerman@knobbe.com

Karen Vogel Weil
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Karen.weil@knobbe.com

February 12, 2019

By: */s/ David A. Bilson*
PHILLIPS, GOLDMAN, MCLAUGHLIN &
HALL, P.A.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
dab@pgmhlaw.com

*Attorneys for Defendant Personal Genome
Diagnostics, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2019, a true and correct copy of the foregoing

document was served on the following counsel of record at the addresses and in the manner

indicated:

*VIA ELECTRONIC MAIL:*

Joseph J. Farnan, Jr.
Brian E. Farnan
Michael J. Farnan
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines
Derek Walter
WEIL, GOTSHAL &MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

February 12, 2019

*/s/ David A. Bilson*
David A. Bilson (#4986)

29835774

# EXHIBIT 5

| From: | Baraa.Kahf |
|---|---|
| To: | Walter, Derek; Constant, Justin; Pistritto, Christopher; Chi, Shawn |
| Cc: | Guardant Health II Service; Knobbe.PGDx |
| Subject: | RE: Guardant v. PGDx - Rule 30(b)(6) designation |
| Date: | Wednesday, April 17, 2019 9:53:11 AM |

Counsel:

Subject to previously served objections and responses, PGDx further designates Dr. Angiouli to testify regarding the bioinformatics aspects of Guardant's Topic No. 3.

Best regards,

Baraa

**From:** Baraa.Kahf <Baraa.Kahf@knobbe.com>
**Sent:** Tuesday, April 16, 2019 2:14 PM
**To:** Walter, Derek <Derek.Walter@weil.com>; Constant, Justin <Justin.Constant@weil.com>; Pistritto, Christopher <Christopher.Pistritto@weil.com>; Chi, Shawn <Shawn.Chi@weil.com>
**Cc:** Guardant Health II Service <Guardant.Health.II.Service@weil.com>; Knobbe.PGDx <Knobbe.PGDx@knobbe.com>
**Subject:** Guardant v. PGDx - Rule 30(b)(6) designation

Counsel:

Subject to previously served objections and responses to Guardant's notice of the Rule 30(b)(6) deposition of PGDx, PGDx designates Dr. Sam Angiouli to testify on Guardant's Topic Nos. 8, 11, and 13-17.  With respect to Topic Nos. 8, 11, 14, and 15, Dr. Angiouli is designated only as to the bioinformatics aspects in connection with each of those topics.

Sincerely,

**Baraa Kahf**
Partner
Baraa.Kahf@knobbe.com
949-721-5395 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/baraa-kahf

# EXHIBIT 6

| | |
|---|---|
| **From:** | Baraa.Kahf |
| **To:** | Walter, Derek; Constant, Justin; Pistritto, Christopher |
| **Cc:** | Guardant Health II Service; Knobbe.PGDx |
| **Subject:** | Guardant v. PGDx -- Rule 30(b)(6) topic designation |
| **Date:** | Wednesday, March 20, 2019 6:10:16 PM |

Counsel:

Subject to previously served objections and responses to Guardant's notice of the Rule 30(b)(6) deposition of PGDx, PGDx designates Mark Sausen to testify on Guardant's Topic Nos. 8, 11, 12, 14, 15, and 18–21.  With respect to Topic Nos. 8, 11, 14, and 15, Mr. Sausen is designated only as to the "wet chemistry" aspects in connection with each of those topics.

Regards,

**Baraa Kahf**
Partner
Baraa.Kahf@knobbe.com
949-721-5395 **Direct**
**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/baraa-kahf

# EXHIBIT 7















