## PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.

JOHN C. PHILLIPS, JR.
ROBERT S. GOLDMAN
LISA C. MCLAUGHLIN
JAMES P. HALL
DAVID A. BILSON
MEGAN C. HANEY

ATTORNEYS AT LAW
PENNSYLVANIA AVE. AND BROOM ST.
1200 N. BROOM STREET
WILMINGTON, DE 19806
_____

(302) 655-4200 (P)
(302) 655-4210 (F)

August 23, 2019

**VIA CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware     REDACTED PUBLIC VERSION
844 N. King Street
Wilmington, Delaware 19801

    Re:    *Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*
              C.A. No. 17-1623-LPS-CJB

Dear Judge Burke:

      We write in response to Guardant's recent filing captioned, "Notice of Subsequent Activity Concerning Guardant's Motion to Dismiss." D.I. 345. Guardant's filing is an unauthorized sur-reply that attempts to submit new extrinsic evidence in support of Guardant's Motion to Dismiss. D.I. 285. The Court should therefore strike it. Should the Court consider Guardant's filing and new evidence, PGDx respectfully requests that the Court consider PGDx's response below.

      Contrary to Guardant's argument, the submitted evidence does not show that PGDx or its expert "*accepted* the later 2014 priority date for the '992 Patent," D.I. 345 at 2 (emphasis in original). PGDx's expert stated, "I understand ***Guardant asserts*** this patent has an earliest priority date of March 5, 2014." D.I. 345, Ex. 1 ¶ 42 (emphasis added). PGDx's expert then separately relied on prior art ***both*** before ***and*** after the September 4, 2012 priority date on the face of the '992 patent. *Compare*, *id*. ¶ 481 (invalidity based on pre-September 4, 2012 prior art), with *id*. ¶ 482 (invalidity based on post-September 4, 2012 prior art). PGDx is permitted to assert such alternative positions without "accepting" Guardant's positions.

      Moreover, to the extent the Court considers new evidence, Guardant's recent statements to the USPTO are far more relevant. Specifically, in connection with FMI's Petition for *Inter Partes* Review of the '992 Patent, Guardant made it clear that it was ***not*** changing the priority claim of September 4, 2012 on the face of that patent. *See, e.g.,* Ex. A at 7-8 ("THE COURT: Okay. All right. And just to be clear, you are not asking to correct the priority claim in the patent, right? You are just saying you are not entitled to that earliest date? MR. ROSATO: That's correct, Your Honor."). This is significant because it preserves Guardant's ability to use the September 4, 2012 date in future litigations and patent applications in the same chain. Moreover, the priority claim on the ***face*** of the patent is far more objective and relevant than Guardant's shifting litigation positions. *See eSpeed, Inc. v. Brokertec USA, L.L.C.,* 417 F. Supp.2d 580, 596 (D. Del. 2006) (relying on priority claim on face of patent). Indeed, Guardant's patent counsel admitted that Guardant was seeking to change Guardant's position at the USPTO in coordination with Guardant's litigation counsel. Ex. A at 6 (Guardant's IPR counsel recently sought to change its

position on priority after "the district court litigation team had brought that to my attention."). Guardant cannot absolve itself of inequitable conduct through self-serving litigation positions taken years after the prosecution of the patents.

Further, Guardant's shifting positions cannot eliminate the extensive overlap in the subject matter of the patents. Consistent with this overlap, should the Court consider new evidence, the Court should consider Guardant's infringement report, which lumps the patents together to discuss the "Approach of the Patents-in-Suit," characterizing the differences as "specific details recited in the various claims of the patents-in-suit." Ex. B ¶¶ 40-62. Similar to its tutorial, Guardant's expert discusses the '992 patent as exemplary of the four patents-in-suit. *Id.* ¶ 45.

At best, Guardant's arguments raise disputed factual issues that should not be resolved on a motion to dismiss. Particularly at the pleading stage, the Court should rely on the face of the '992 patent, which is attached to Guardant's Complaint (D.I. 280, Ex. 4), and claims priority to the September 4, 2012 application. The Court should also credit PGDx's allegations, which must be accepted as true, that "there is a significant relationship between and among" the patents-in-suit because the '992 Patent "shares an almost identical specification" and "relies on the earlier disclosed subject matter for written description support for its claims." D.I. 284 ¶ 50.

We are available at the Court's convenience should Your Honor have any questions.

Respectfully submitted,

*/s/ John C. Phillips, Jr.*

John C. Phillips, Jr. (No. 110)

cc: All counsel of record (via CM/ECF & email)

# EXHIBIT A

| | |
|---|---|
| 1 | UNITED STATES PATENT AND TRADEMARK OFFICE |
| 2 | _____ |
| 3 | BEFORE THE PATENT TRIAL AND APPEAL BOARD |
| 4 | _____ |

**REPORTER CERTIFIED TRANSCRIPT**

```
 6              FOUNDATION MEDICINE, INC.,

 7                      Petitioner,

 8                         v.

 9              GUARDANT HEALTH, INC.,

10                    Patent Owner.

11              _____

12              Case No. IPR2019-00636

13              U.S. Patent No. 9,902,992

14              _____

17       REPORTER'S TRANSCRIPT OF PROCEEDINGS OF COURT CALL

18                   ANAHEIM, CALIFORNIA

19                   FRIDAY, JULY 19, 2019


24  STENOGRAPHICALLY REPORTED BY:
    JAMIE L. ASBURY
    CSR NO. 13308, CCRR NO. 206
25  JOB NO.: 19-29221
```

CHASE LITIGATION SERVICES

```
 1              The reporter's transcript of proceedings was
 2     taken telephonically on behalf of the Petitioner at
 3     2300 East Katella Avenue, Suite 300, Anaheim,
 4     California, commencing at 11:00 a.m., on Friday,
 5     July 19, 2019, before Jamie L. Asbury, CSR 13308,
 6     CCRR 206.
 7
 8
 9
10
11
12                       A P P E A R A N C E S
13
14     APPEARING VIA SPEAKERPHONE FOR THE PETITIONER:
15
16              CHOATE, HALL & STEWART LLP
17              BY:  STEPHANIE L. SCHONEWALD, ATTORNEY AT LAW
18                   MARGARET IVES, ATTORNEY AT LAW
19              TWO INTERNATIONAL PLACE
20              BOSTON, MASSACHUSETTS 02110
21              617.248.5000
22              sschonewald@choate.com
23              mives@choate.com
24
25
```

```
 1   APPEARANCES CONTINUED:
 2
 3   APPEARING VIA SPEAKERPHONE FOR THE PATENT OWNER:
 4
 5           WILSON SONSINI GOODRICH & ROSATO
 6           BY:  MICHAEL ROSATO, ATTORNEY AT LAW
 7                SONJA R. GERRARD, ATTORNEY AT LAW
 8           701 FIFTH AVENUE
 9           SUITE 5100
10           SEATTLE, WASHINGTON 98104
11           206.883.2529
12           mrosato@wsgr.com
13           sgerrard@wsgr.com
14
15
16   BEFORE ADMINISTRATIVE PATENT JUDGES:
17           TINA E. HULSE
18           JOHN E. SCHNEIDER
19           KRISTI L. R. SAWERT
20
21
22
23
24
25
```

Reporter's Transcript of Proceedings of Court Call

```
 1          FRIDAY, JULY 19, 2019; ANAHEIM, CALIFORNIA
 2                       11:00 A.M.
 3                         - - -
 4          THE COURT:  We understand that patent owner has
 5  requested this call to request authorization to file a
 6  corrected preliminary response in both proceedings to
 7  correct its assertion that the '992 patent is entitled
 8  to a September 4th, 2012, priority date in both
 9  proceedings.
10          Thank you.  We've received the proposed
11  corrections to the preliminary responses in both cases.
12  So why don't we start with patent owner so you can
13  explain why there's good cause.
14          MR. ROSATO:  Sure, Your Honor.
15          So, yeah, we made the request for the
16  correction.  We didn't actually request the call.  I
17  think it was the petitioner that was insisting on a
18  call.
19          But that being said, our request was set forth
20  in the email sent to the board on July 1st.  This is
21  just an issue where the patent owner preliminary
22  responses mention an earliest filed provisional
23  application, the one filed on September 4th, 2012.
24          We just wanted to be clear that the patent
25  owner is not asserting that the '992 patent is entitled
```

Reporter's Transcript of Proceedings of Court Call

1  to that September 4th, 2012, priority date. We didn't
2  want any confusion. So to the extent the POPR suggests
3  otherwise, we had proposed making the correction that
4  was requested, and that was a simple striking of a few
5  identified sentences. No additions or anything to the
6  content, simply deleting a few sentences.
7         Now, I understand the petitioner has opposed
8  this request. I honestly have no idea why they are
9  opposing the request. The request is straightforward.
10 It can either be granted or not. We would say, however,
11 if petitioner wants to concede that '992 is entitled to
12 a September 4th, 2012, priority date for the purposes of
13 this IPR, then we can all accept that concession for the
14 purposes of this IPR.
15        Now, to be clear, we don't think that's
16 correct, but petitioner's concession would certainly
17 simplify the issues in front of the board. And we know
18 that's why they didn't challenge the priority dates in
19 their petition or qualify their cited art as prior art.
20        THE COURT: So are you in a position to state
21 what patent owner does contend is the correct priority
22 date?
23        MR. ROSATO: I mean, we -- that was -- there's
24 a section in the patent owner preliminary response where
25 I think the issue was the Schmidt reference, and the

Reporter's Transcript of Proceedings of Court Call

1  petitioner's representation that content was -- that
2  they are relying on was carried throughout the entire
3  chain of Schmidt, and the point was it was not.  Other
4  than that, I mean obviously it's our burden to go
5  through it and, you know, make this assessment.  I will
6  say that at district court it was brought to my
7  attention that in district court the identified entitled
8  priority date for the '992 patent was presented as
9  March 5th, 2014.
10           THE COURT:  Okay.  And when was that assertion
11  in district court made?
12           MR. ROSATO:  I don't know exactly.  I'm not
13  district court litigation and the district court
14  litigation team had brought that to my attention, which
15  is, you know -- I learned that after filing the POPRs,
16  and I just wanted to make sure that, you know, we were
17  being accurate to the board.
18           THE COURT:  Okay.  So notwithstanding this
19  change, the rest of your arguments still remain the same
20  regarding --
21           MR. ROSATO:  Our argument is that the
22  petitioner has made the assertion that content they are
23  relying on in the Schmidt reference is carried through
24  the chain, and our argument that that is clearly not the
25  case all remains true.

|     |     |
| --- | --- |
| 1   | THE COURT:  Okay.  Are there any other issues |
| 2   | that the change affects? |
| 3   | MR. ROSATO:  I don't believe so, Your Honor. |
| 4   | THE COURT:  Okay.  All right.  And I guess my |
| 5   | question now is:  Why couldn't this correction be made |
| 6   | in the patent owner responses we institute at trial? |
| 7   | Why does it have to be made now? |
| 8   | MR. ROSATO:  I mean, Your Honor, you are free |
| 9   | to determine whether it needs to be made up.  I wanted |
| 10  | to make sure we're informing the board so there's no |
| 11  | confusion.  You know, just there's -- look, I just |
| 12  | wanted to be consistent with what has been presented and |
| 13  | to be clear that we're not presenting something that's |
| 14  | contrary to that.  So it's an issue of avoiding |
| 15  | confusion. |
| 16  | THE COURT:  Okay.  And I'm sure you saw in |
| 17  | petitioner's email to us, just, it contends that patent |
| 18  | owner has told the office previously that the effective |
| 19  | filing date of the '992 is September 4th, 2012; is that |
| 20  | true? |
| 21  | MR. ROSATO:  I'm not sure what they are |
| 22  | referring to.  I don't know. |
| 23  | THE COURT:  Okay.  All right.  And just to be |
| 24  | clear, you are not asking to correct the priority claim |
| 25  | in the patent, right?  You are just saying you are not |

```
 1   entitled to that earliest date?
 2           MR. ROSATO:  That's correct, Your Honor.
 3           THE COURT:  Okay.
 4           MR. ROSATO:  And we don't think the POPRs
 5   suggest otherwise, but to the extent it adds confusion,
 6   we're just clarifying that we were not making an
 7   assertion that we're entitled to the September 4, 2012,
 8   priority date.
 9           THE COURT:  Okay.  Okay.  Anything else?
10           MR. ROSATO:  Not from us, Your Honor.
11           THE COURT:  Okay.
12           All right.  Petitioner, would you like to
13   respond?
14           MS. SCHONEWALD:  Sure.
15           From our side, I think that part of the
16   struggle we're having is that the requested edit doesn't
17   appear to be correcting an inadvertent error.  I'm a
18   little surprised to hear that the patent owner is
19   unaware of how the facts they represented to the office,
20   which -- I mean, in the '992 patent, on its face, the
21   representation is that the priority date is
22   September 4th, 2012, and a number of ADSes were filed
23   during prosecution, all of which maintain the priorities
24   claim, and that took place actually after the assertion
25   was first made in the litigation.  So it was, again,
```

```
 1   sort of a question as to what did they see was the error
 2   here.
 3              But perhaps more significantly for us, I think
 4   the question is that it touches on the issue that you
 5   are driving to, the priority has an impact on whether or
 6   not Schmidt is -- qualifies as prior art, and the patent
 7   owner is suggesting that they go ahead and strike the
 8   sentences that are there, but they are not affirmatively
 9   stating that they are not relying on that priority date
10   or what priority date they are relying on.
11              So from our point, I guess, of view -- and
12   maybe one thing that we would seek guidance on is what
13   is the actual priority date that should be asserted.
14   And it seems like, to us, our position is that it should
15   be the filing date of the '992 patent itself.  And
16   there, I think that the date is March 21st, 2016.
17              So for those reasons I think the question that
18   we're having is they are striking the sentences that
19   talk about the priority date, but they are maintaining
20   the challenge to Schmidt of prior art.  And so those two
21   things are a bit in conflict, because if the priority
22   date is March 21st, 2016, then the argument that they
23   are making regarding Schmidt goes away.  So I think what
24   we're looking for in our position is that if patent
25   owner's proposed that it's our thing, that the
```

```
 1   September 4th, 2012, date is not the correct priority
 2   date, then the argument regarding whether or not Schmidt
 3   qualifies as prior art should also be struck.  And then,
 4   again, if it's not actually -- if they are maintaining
 5   the September 2012 priority date, then, again, we are
 6   kind of confused as to what the error is.
 7           THE COURT:  Okay.  Are there any other issues
 8   that arise from the change in priority date from your
 9   perspective other than Schmidt?
10           MS. SCHONEWALD:  No.  It's really about whether
11   or not Schmidt qualifies as prior art and what would
12   need to be shown.
13           You know, it's our position that Schmidt is
14   prior art regardless of the priority date, and we
15   believe we met our burden on that in the petition, but
16   patent owner takes a different view.  And so it would be
17   helpful to understand what priority date was being
18   asserted so that we can address whether or not -- you
19   know, does the question still remain?
20           THE COURT:  Okay.  But would you agree, though,
21   that -- I mean I guess there is a question as to whether
22   Dynamic Drinkware applies here, but I think generally
23   the concept of the burden-shifting framework does apply.
24   So if you have shown, in your petition, that Schmidt,
25   you know, sort of made that initial burden -- satisfied
```

1  that initial burden of production, then that burden
2  shifts to patent owner and their patent owner responses
3  show why that's not the case, right?
4       So they could certainly come back in the patent
5  owner responses and explain then why you haven't shown
6  Schmidt this prior art or why they are entitled to an
7  earlier priority, et cetera, et cetera.  So in our view,
8  it doesn't seem like it really does affect -- this
9  change really does affect Schmidt, at least from our
10 perspective of whether to institute.
11      Would you agree?
12      MS. SCHONEWALD:  I'm not sure that I wholly
13 follow, but I think what -- it sounds like we may be in
14 agreement, which is, from our perspective, if the
15 priority date of the '99- -- well, regardless of the
16 priority date, we believe Schmidt is prior art and we
17 believe we met our burden.  But if the priority date of
18 the '992 patent shifts to its filing date, because of
19 another priority date wasn't affirmatively set forth,
20 that then they have a March 21st, 2016, priority date
21 and there's no need to actually establish that Schmidt
22 has -- can trace its disclosure to a priority
23 application because its own filing date is well before
24 that date.
25      THE COURT:  Right.  Right.  So in that case

```
 1   then -- I mean you've made the argument, but you just
 2   didn't need to make that argument, right?  It's not like
 3   that argument needs to necessarily change.
 4            MS. SCHONEWALD:  Correct, yes.  I don't think
 5   from -- from our side we wouldn't change our --
 6   petitioner is not proposing changing our argument.  We
 7   are just trying to seek clarification as to what patent
 8   owner's argument is if this priority date is shifting
 9   and whether we need to respond.
10            THE COURT:  Okay.  All right.  Patent owner
11   would you like to respond?
12            MR. ROSATO:  I mean I don't think -- the only
13   comment, I guess, is, you know, the assertion about
14   things being intentional or not.  I don't think counsel
15   from either side has some window into the consciousness
16   of the other lawyers, so I don't think that's helpful.
17   The request is straightforward and there's really
18   nothing else to discuss about it.
19            THE COURT:  What about basically the request of
20   some clarity as to what patent owner is asserting is the
21   effective filing date of '992?
22            MR. ROSATO:  I mean I can tell you -- as I
23   indicated, the section in the POPR was meant to address
24   the positive assertion that was made in the petition.
25   As far as the analysis itself, or the priority date of
```

```
 1   the '992, you know, as I indicated in the district court
 2   case, patent owner has represented a priority date of
 3   March 5th, 2014.
 4              THE COURT:  Okay.
 5              Oh.  Going back -- I'm sorry.  Ms. Petitioner,
 6   I ask -- I'm sorry -- yeah, petitioner.
 7              In your email you mentioned that the office --
 8   that patent owner had previously told the office that
 9   the effective filing dated of the '992 is September 4th,
10   2012.
11              Can you tell us where you found that
12   information?
13              MS. SCHONEWALD:  Sure.  What we were talking
14   about is that during prosecution, the patent owner
15   filed, of course, an ADS when they filed the original
16   application, and there they represented that the
17   priority date was September 2012.  And then at -- I
18   think it's three different points in time there were
19   three additional corrective ADSes that were filed which
20   shifted the inventorship of the case, and at each time
21   they maintained their priority claim to September 2012,
22   including an ADS that was filed in September of 2018.
23              THE COURT:  Okay.  Okay.  Thank you.
24              All right.  Well, I'm going to put you all on
25   mute and confer with the panel again.
```

```
 1                    (Pause in the proceedings.)
 2            THE COURT:  Okay.  The panel is back online.
 3       Petitioner, are you still there?
 4            MS. SCHONEWALD:  We're here.
 5            THE COURT:  Patent owner?
 6            MR. ROSATO:  Yes, Your Honor.
 7            THE COURT:  Okay.  The panel has conferred and
 8  although I believe the patent owner could correct the
 9  error in the patent owner responses we do institute, we
10  don't see any prejudice to petitioner in allowing patent
11  owner to correct the patent owner preliminary responses
12  now for the sake of a clear record.
13            So, patent owner, you are authorized to file a
14  corrected preliminary response in both proceedings.
15       Can you do so by the end of the day today?
16            MR. ROSATO:  I believe we can, Your Honor.  I
17  will double-check with my paralegal, but I don't see any
18  issues there.
19            THE COURT:  Okay.  We can just say by the end
20  of next week, but as long as it can be done
21  expeditiously.
22            And we will -- once you do file that corrected
23  petition, then we will expunge the originally filed
24  preliminary responses on our end.  All right?
25            While we have everybody here, does anybody have
```

Reporter's Transcript of Proceedings of Court Call

1  any other issues they'd like to discuss?  Petitioners --
2           MS. SCHONEWALD:  None from petitioners.
3           THE COURT:  -- start with you.
4           Great.  Thank you.
5           Patent owner?
6           MR. ROSATO:  No, Your Honor.  Thank you, and
7  have a good weekend.
8           THE COURT:  Great.  Thank you.
9           We will enter an order in due course
10 memorializing this call.  This call is adjourned.
11          Have a good day.
12          MR. ROSATO:  Thank you.
13          MS. SCHONEWALD:  Thank you, Your Honor.
14               (Ending time:  11:23 a.m.)
15
16
17
18
19
20
21
22
23
24
25

```
 1        I, Jamie L. Asbury, CSR No. 13308, CCRR No. 206,
 2   certify:  That the foregoing proceedings were taken
 3   before me at the time and place herein set forth and
 4   that the transcript is a true record of the proceedings.
 5        The dismantling, unsealing, or unbinding of
 6   the original transcript will render the reporter's
 7   certificate null and void.
 8        I further certify that I am not financially
 9   interested in the action, and I am not a relative or
10   employee of any attorney of the parties, nor of any of
11   the parties.
12
13
14
15
16        Dated this 2nd day of August, 2019.
17                  [signature]
18
19        _____
20             JAMIE L. ASBURY
21
22
23
24
25
```

# EXHIBIT B
# (Redacted in its entirety)