**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| GUARDANT HEALTH, INC., | |
| Plaintiff, | |
| v. | C. A. No. 17-cv-1616-LPS-CJB |
| FOUNDATION MEDICINE, INC., | **FILED UNDER SEAL** |
| Defendant. | |
| GUARDANT HEALTH, INC., | |
| Plaintiff, | |
| v. | C. A. No. 17-cv-1623-LPS-CJB |
| PERSONAL GENOME DIAGNOSTICS, INC., | **FILED UNDER SEAL** |
| Defendant. | |

**MOTION FOR LEAVE TO FILE A SUR-REPLY AND TO INTRODUCE NEWLY DEVELOPED EVIDENCE OR, ALTERNATIVELY, REFER THE MATTER BACK TO <u>MAGISTRATE JUDGE BURKE</u>**

In their November 8 response to Guardant Health, Inc.'s ("Guardant's") objection to

Magistrate Judge Burke's October 11, 2019 report and recommendation regarding claim

construction (D.I. 389)[1], Defendants contend that Guardant's objection raises new arguments

regarding the definiteness of the claim terms "beginning" and "end."  According to Defendants,

Guardant "argues, for the first time, that these words are not indefinite because they are 'words

of degree' akin to 'substantially' or 'approximately.' D.I. 255, 1, 3-4. Guardant further argues

that the claims 'require a particular function,' and that this specific 'functional directive'

provides a 'standard of measurement' for a person of ordinary skill in the art ('POSA')."  D.I.

406 at 3.  This is Defendants' main argument.  Pursuant to Paragraph 7 of the Court's Standing

_____

[1] All "D.I. __" cites refer to C.A. 17-1623-LPS-CJB.

Order for Objections Filed under Fed. R. Civ. P. 72, Guardant seeks leave to file a reply in

support of its Objection to address this erroneous argument.  Guardant further seeks leave to

present newly developed evidence to the Court concerning Magistrate Judge Burke's

indefiniteness finding or, alternatively, requests that this matter be referred back to Magistrate

Judge Burke to consider the evidence that was not available when he decided the issue.

**A.      The Arguments Raised by Defendants Warrant a Reply Brief**

Defendants' assertion that Guardant has presented new arguments is flat out wrong.  In

fact, Guardant raised precisely these arguments in both its opening and reply claim construction

briefs.  For instance, the following excerpt from Guardant's opening claim construction brief

shows that Guardant argued that the functional language in the claim helps define the scope of

"beginning" and "end:"

> Second, the specification explains that the information at the "beginning" and "end" of
> the sequence read must be of sufficient length to serve the purpose of detecting
> sequencing reads of unique identity. Likewise, the claim language itself explains that the
> information is used to group the reads into families. See D.I. 47-3 at claim 1(e). While
> Defendants contend that the claims are indefinite unless there is some hard boundary on
> the "beginning" and "end" of the sequence read (stated in terms of, for instance, a
> number of bases or percentage of the sequence read), this guidance in the claims and
> specification regarding its purpose provides objective guidance as to the scope of the
> claims. *See, e.g.*, *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879
> F.3d 1332, 1346-47 (Fed. Cir. 2018) (finding no indefiniteness where the "function of the
> elongated and substantially straight baffle portions provides further guidance regarding
> the scope of the claim language"); *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360,
> 1366 (Fed. Cir. 2017) ("But the Nautilus standard of 'reasonable certainty' does not
> exclude claim language that identifies a product by what it does."); *Tinnus Enterprises,
> LLC v.  Telebrands Corp.*, 733 F. App'x 1011, 1019 (Fed. Cir. 2018) ("The claim
> language indicates that, to meet the limitation of 'elastic fastener' with the requisite
> 'connecting force,' the apparatus must be 'substantially filled' such that it detaches when
> shaken.").

D.I. 59 at 17-18.  Guardant reiterated these very arguments in its reply brief:

> In its opening brief, Plaintiff explained that the claim itself provides the purpose for
> which the sequence information at a beginning or end of the sequence is used, namely,

> grouping of the plurality of sequence reads. This provides objective guidance as to the
> scope of the claims, as confirmed by the numerous cases cited by Plaintiff, which
> Defendants ignore. D.I. 56 at 17-18.  *See, e.g.*, *Exmark Mfg. Co. Inc. v. Briggs & Stratton
> Power Prod. Grp.*, LLC, 879 F.3d 1332, 1346-47 (Fed. Cir. 2018); *BASF Corp. v.
> Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017); *Tinnus Enterprises, LLC v.
> Telebrands Corp.*, 733 F. App'x 1011, 1019 (Fed. Cir. 2018). Given the objective
> guidance provided by the purpose of the claim, a POSA would understand what
> considerations that would go into the choice of sequence information used.  Defendants'
> expert, Dr. Gabriel, concedes one such factor that a POSA would take into consideration,
> explaining that "the greater the number of nucleotides taken into account, the easier it is
> to distinguish the sequence reads from one another (that is, the comparison is more
> informative)."

D.I. 72 at 13-14.   Importantly, the *Exmark*, *BASF*, and *Tinnus* cases relied upon by Guardant in

its opening and reply claim construction briefs are the exact same cases that address the interplay

between terms of degree and functional claim language that Guardant relied upon in its

objection.  *See* D.I. 399 at 4, 6 (Guardant cites *Exmark* in its objection); *id.* at 6 (citing

*Tinnus*).  While Guardant's objection cites a few additional passages in the specification (the

entirety of which was undeniably of record before Magistrate Judge Burke), these additional

citations were minimal and entirely warranted in view of the particular grounds upon which

Magistrate Judge Burke made his indefiniteness ruling.  Defendants' reliance on the allegation

that there are new arguments in Guardant's objections as its main argument speaks to the lack of

substance underlying Defendants' attempt to show that "beginning" and "end" are indefinite.

> **B.      The Court Should Consider Newly Developed Evidence or Refer this Issue
>         Back to Magistrate Judge Burke**

While none of the arguments in Guardant's objections are new, as demonstrated by

Guardant's recently filed certification (D.I. 408), there has been substantial additional evidence

that developed during expert discovery confirming that Defendants cannot possibly show by

clear and convincing evidence that "beginning" and "end" are indefinite.  This evidence, which

was not available when Guardant submitted its objection, is overwhelming and is summarized

below.  Given that this evidence was not available at the time of the *Markman* hearing, Guardant

respectfully requests that the Court grant Guardant leave to submit this evidence as part of its

objection before the Court or, alternatively, that the Court refer this issue back to Magistrate

Judge Burke so that he may consider the full record.  Defendants have themselves submitted

additional evidence that has arisen during the expert discovery phase with their objections to

Magistrate Judge Burke's report and recommendations, *see* D.I. 378-1, and have thus

acknowledged that it is appropriate for the Court to consider such evidence.

Perhaps most important, PGDx's expert, Dr. Olivier Harismendy, confirmed that he

understood the functional purpose of the "beginning" and "end" of the sequence reads in the

context of the claims, and was able to equate this to the purpose of distinguishing reads that arise

from a "different parent polynucleotide:"

> Q. Well, let me ask the question more generally: What is the role of the beginning and
> ends of the sequence reads in Claim 1 of the '731 patent? How is that information used?
> A. That would be equivalent to what is disclosed in the '095 patent, for example.
> Q. And what is that?
> A. This notion of endogenous UID that we reviewed yesterday.
> Q. And what is that notion?
> A. That notion is that this endogenous UID  allows us to distinguish reads that originates
> from the same parent polynucleotide from reads that originate from a different parent
> polynucleotide.

Ex. A at 298:23-299:11; *see also id.* at 301:23-302:1 ("Q. Endogenous UIDs in the '095 patent is

something you rely upon in your report; right? A. Again, it's around the same notion that they are

similar to beginning and end."); *id.* at 314:11-315:8.  This is the exact purpose Guardant has

identified from the outset.  *See* D.I. 59 at 17 (explaining that the "beginning" and "end" is used

to group sequence reads into families).  Dr. Harismendy went on to explain that "beginning" and

"end" corresponded to the positions where the sequence reads mapped.  Ex. A at 318:19-319:2

("Q. Okay. You said you applied at a high level your understanding of beginning and end.  I

want to know what your understanding of beginning and end was that you applied at a high level.

What was that understanding? A. Again, we discussed before it's where the reads are mapping;

right, at a high level."). Dr. Harismendy confirmed that the amount of sequence information

required to determine this would vary depending on the region of the genome, and that in 2012

the person of skill in the art had readily available information regarding the genome to make this

assessment. *Id.* at 302:5-305:23. This alone removes any notion that Defendants can prove

indefiniteness by a clear and convincing standard.

As if this were not enough, Dr. Harismendy further confirmed that he had a "good

understanding" of the claims so that he could render his infringement and validity opinions, Ex.

B at 175:8-12, and that he was "reasonably certain" about the meaning of all the claim terms

where PGDx did not provide a construction:

> Q. Okay. And for all the terms where there wasn't a construction, you felt reasonably
> certain about what the meaning of those claim terms was; right?
> A. Yes, I would say so.

*Id.* at 176:2-7. Dr. Harismendy had no problem applying the claim language to the prior art "no

matter what the definition of beginning and end ends up being in the end:"

> Q. Okay. What did you mean when you were referring to sequence information from the
> ends of the sequenced DNA fragments?
> A. Well, I think what I meant is no matter what the definition of beginning and end ends
> up being in the end, I think was probably – despite this indefiniteness, I had enough
> information to say that it was within the scope -- scope of this claim.

*See* Ex. A at 312:21-313:3. Consistent with this, Dr. Harismendy proposed that a non-infringing

alternative to using the "beginning" and "end" would be to use the "middle" of a sequence

read. *Id.* at 293:4-12. He explained that one of skill in the art could distinguish the "middle"

from the "beginning" and "end" by virtue of the "middle" having equal sequence information

about the center of the sequence. *Id.* at 295:7-19. Of course, if "beginning" and "end" are so

indefinite that one cannot distinguish among the "beginning," "middle," and "end," a person of ordinary skill in the art would not suggest that using the "middle" is an alternative to the "beginning" and "end."

Foundation Medicine's expert, Dr. Stacey Gabriel, gave additional testimony confirming that there is no indefiniteness problem.  As Guardant noted during claim construction and in its objections, during claim construction she acknowledged that the person of ordinary skill in the art would understand the scope of these terms.  *See* D.I. 399 at 7-8.  During the expert discovery phase, she had no trouble equating "information at the beginning and end of the sequence derived from the parent polynucleotides" with sheared ends of DNA fragments.   Ex. C at 106:8-12, 17-24.  Likewise, she confirmed that the sequence start and stop positions "fits within" what the claim terms "beginning" and "end" could mean.  *Id.* at 107:5-108:20.  She had no trouble confirming that the prior art disclosed the "ends" of sequence reads in connection with her invalidity analysis.  *Id.* at 183:21-184:4, 184:11-19.  This repeated testimony weighs against a finding of indefiniteness.

## C.      Conclusion

In sum, although Guardant's objections do not include new arguments, in view of the additional evidence that has arisen since claim construction one cannot possibly conclude that there is clear and convincing evidence to establish indefiniteness.  Guardant, therefore, respectfully request leave to file a sur-reply brief demonstrating it has not raised any new arguments and either (i) leave to submit additional evidence to the Court not available at the time of the *Markman* hearing demonstrating the claims are not indefinite or (ii) that refer this issue be referred back to Judge Burke so that he may consider the full record.

Dated: November 12, 2019

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street
12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL &MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Plaintiff*