IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUARDANT HEALTH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FOUNDATION MEDICINE, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 17-1616 (LPS) (CJB) |
| GUARDANT HEALTH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PERSONAL GENOME DIAGNOSTICS, )<br>INC., )<br>)<br>Defendant. )<br>) | C.A. No. 17-1623 (LPS) (CJB) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR JOINT
<u>MOTION FOR SUMMARY JUDGMENT OF INVALIDITY</u>**

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
dab@pgmhlaw.com

*Attorneys for Defendant Personal Genome
Diagnostics, Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for Foundation Medicine, Inc.*

OF COUNSEL:

Joseph R. Re
Stephen W. Larson
Baraa Kahf
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

William R. Zimmerman
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
(202) 640-6400

Yanna S. Bouris
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450

December 10, 2019

OF COUNSEL:

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane Seol
John C. Calhoun
Xing-Yin Ni
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II. SUMMARY OF ARGUMENT ......................................................................................... 1

III. STATEMENT OF FACTS ................................................................................................ 2

IV. ARGUMENT ..................................................................................................................... 2

    A. Claims 1-3, 5-14, and 16-17 of the '731 Patent, and Claims 19 and 20 of the '992 Patent Are Invalid Due to Indefiniteness ............................................... 2

    B. Claim 2 of the '822 Patent, and Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 Patent Are Invalid For Lack of Written Description ............ 3

    C. Claim 2 of the '822 Patent, and Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 Patent Are Not Entitled to an Earlier Priority Date and Are Invalid Under Section 102(a) ................................................................. 5

    D. Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 Patent Lack Enablement ................................................................................................... 6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcon Research, LTD. v. Apotex Inc.*,
   687 F.3d 1362 (Fed. Cir. 2012) ............................................................................................7

*ALZA Corp. v. Andrx Pharms., LLC*,
   603 F.3d 935 (Fed. Cir. 2010) ................................................................................................8

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) ..........................................................................................3, 4

*Boston Sci. Corp. v. Johnson & Johnson*,
   647 F.3d 1353 (Fed. Cir. 2011) .............................................................................................3

*In re Buchner*,
   929 F.2d 660 (Fed. Cir. 1991) ...............................................................................................7

*Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*,
   541 F.3d 1115 (Fed. Cir. 2008) .............................................................................................5

*Enzo Life Scis., Inc. v. Roche Molecular Sys., Inc.*,
   928 F.3d 1340 (Fed. Cir. 2019) .............................................................................................6

*In re Fisher*,
   427 F.2d 833 (C.C.P.A. 1970) ...............................................................................................7

*Genentech, Inc. v. Novo Nordisk A/S*,
   108 F.3d 1361 (Fed. Cir. 1997) .............................................................................................7

*Grecia v. Samsung Elecs. Am., Inc.*,
   780 Fed. App'x. 912 (Fed. Cir. 2019) ...................................................................................2

*Harris Corp. v. IXYS Corp.*,
   114 F.3d 1149 (Fed. Cir. 1997) .............................................................................................8

*ICU Med., Inc. v. Alaris Med. Sys.*,
   558 F.3d 1368 (Fed. Cir. 2009) ..........................................................................................4, 5

*Intellectual Ventures I LLC v. Canon Inc.*,
   36 F. Supp. 3d 449 (D. Del. 2014) ................................................................................1, 2, 3

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005) ..........................................................................................4, 5

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
    687 F.3d 1377 (Fed. Cir. 2012) ............................................................................. 2, 7, 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ................................................................................................ 1, 2

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F. 3d 1299 (Fed. Cir. 2008) ...................................................................... 2, 4, 5, 6

*Sitrick v. DreamWorks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) ....................................................................................... 6

*Stored Value Sols., Inc. v. Card Activation Techs. Inc.*,
    499 Fed. Appx. 5 (Fed. Cir. 2012) ................................................................................. 5

*Univ. of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004) .......................................................................... 1, 2, 3, 4

*Wyeth & Cordis Corp. v. Abbott Labs.*,
    720 F.3d 1380 (Fed. Cir. 2013) ................................................................................ 2, 6

**Statutes**

35 U.S.C. § 102(a) ............................................................................................................ 2, 5, 6

35 U.S.C. § 112 ................................................................................................................... 1, 2

35 U.S.C. § 112(b) ................................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................ 1

I.  **NATURE AND STAGE OF THE PROCEEDINGS**

The nature and stage of each of the captioned proceedings are set forth in Defendants' separate motions for summary judgment, filed herewith in C.A. No. 17-1623-LPS-CJB (for Defendant PGDx) and C.A. No. 17-1616-LPS-CJB (for Defendant Foundation Medicine).

II. **SUMMARY OF ARGUMENT**

1. <u>Summary Judgment of Invalidity: Indefiniteness:</u> Claims 1-3, 5-14, and 16-17 of U.S. Patent No. 9,598,731 (the "'731 patent"), and claims 19 and 20 of U.S. Patent No. 9,902,992 (the "'992 patent"), are indefinite under 35 U.S.C. § 112 as a matter of law because, as the Court correctly found at claim construction,[1] the "sequence information" terms fail to inform, with reasonable certainty, a person of ordinary skill in the art (a "POSA") about the scope of the claims. *See* FED. R. CIV. P. 56(a); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014); *Intellectual Ventures I LLC v. Canon Inc.*, 36 F. Supp. 3d 449, 464 (D. Del. 2014).

2. <u>Summary Judgment of Invalidity: Lack of Written Description:</u> Claim 2 of U.S. Patent No. 9,834,822 (the "'822 patent"), and claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 patent are invalid for lack of written description. It is undisputed that while the claims cover detecting (a) one or (b) multiple mutations at a single locus, the specification does *not* disclose detecting multiple mutations at a single locus. *See* D.I. 239[2], 6; 35 U.S.C. § 112; *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004).

3. <u>Summary Judgment of Invalidity: Lack of Priority and Anticipation:</u> Because the earlier priority applications similarly fail to disclose detecting multiple mutations at a single locus, Guardant has failed to meet its burden to prove that claim 2 of the '822 patent, and claims 1-7, 9, 13-

---

[1] *See* D.I. 239, 19-21. Guardant's Objections to the Report and Recommendation ("R&R") are pending. *See, e.g.*, D.I. 255. As explained in Defendants' Response to Guardant's Objections and subsequent briefing, however, the R&R correctly determined that these limitations are indefinite. *See* D.I. 265, 279.

[2] Unless otherwise noted, all D.I. cites are to the docket in C.A. No. 17-1616-LPS-CJB.

15, 18-20, 22, 29-31, and 33 of the '992 patent, are entitled to an earlier priority date.  35 U.S.C. § 112; *Univ. of Rochester*, 358 F.3d at 920; *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F. 3d 1299, 1305-06 (Fed. Cir. 2008).  These claims thus are invalid in view of Guardant's prior sales of its own products, which it alleges embody the claims.  35 U.S.C. § 102(a).

        4.    <u>Summary Judgment of Invalidity: Lack of Enablement:</u>  Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 patent are invalid for lack of enablement because their full scope requires tagging "at least 20%" of the cfDNA molecules (including "at least 80%"), and the patent does not enable this full scope.  *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1382-84 (Fed. Cir. 2012); *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013).

**III.**    <u>**STATEMENT OF FACTS**</u>

Relevant undisputed facts are provided below as part of the Argument.

**IV.**    <u>**ARGUMENT**</u>

    **A.**    **Claims 1-3, 5-14, and 16-17 of the '731 Patent, and Claims 19 and 20 of the '992 Patent Are Invalid Due to Indefiniteness**

This Court already ruled during claim construction that "Defendants have proved by clear and convincing evidence that" the claim terms, "sequence information at a beginning of the sequence derived from cell-free DNA/the cfDNA molecule" / "sequence information at an end of the sequence derived from cell-free DNA/the cfDNA molecule" are indefinite, and therefore that "claim 1 of the '731 patent and claims 19 and 20 of the '992 patent [are] indefinite." D.I. 239, 19.  Accordingly, summary judgment should be entered invalidating these claims as a matter of law.  *See Intellectual Ventures I*, 36 F. Supp. 3d at 464 (granting summary judgment of invalidity based on prior claim construction ruling finding indefiniteness); 35 U.S.C. § 112(b); *Nautilus*, 572 U.S. at 901.  Because claims 2-3, 5-14, and 16-17 of the '731 patent all depend from claim 1, these dependent claims likewise should be declared invalid.  D.I. 149-1, 62:55-63:2, 63:5-64:11, 64:13-20; *see Grecia v. Samsung Elecs. Am., Inc.*, 780 Fed. App'x. 912, 913 (Fed. Cir. 2019) (upholding indefiniteness of

dependent claims); *Intellectual Ventures I*, 36 F. Supp. 3d at 464 (same).

### B. Claim 2 of the '822 Patent, and Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 Patent Are Invalid For Lack of Written Description

"[T]he purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Univ. of Rochester*, 358 F.3d at 920 (quotations omitted). To satisfy the written description requirement, an applicant must demonstrate that she is "in possession" of the claimed subject matter as of the priority filing date. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1355 (Fed. Cir. 2010). "Possession" requires "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id*. Written description is a question of fact that can be resolved at summary judgment "based solely on the language of the patent specification" where there is no genuine issue of material fact that the written description fails to describe the claimed invention. *Univ. of Rochester*, 358 F.3d at 927; *see also, e.g.*, *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1363 (Fed. Cir. 2011) (affirming summary judgment of no written description).

In this case, there are no issues of material fact regarding the lack of written description, and thus summary judgment is appropriate. The Court has construed the terms "detecting, at one or more loci…", and "detecting, at one or more genetic loci…." from independent claim 2 of the '822 patent and independent claim 1 of the '992 patent according to the constructions proposed by Guardant to encompass detecting ***multiple*** mutations at ***a single*** locus at a time. D.I. 53, 18; D.I. 63, 14-15; D.I. 239, 11; D.I. 151-2, 62:49-51; D.I. 151-4, 64:35-41. In its decision, the Court noted two undisputed facts: (1) the patent specification discloses detection of only "one individual type of mutation at a locus at a time," and (2) "the specification does *not* disclose an embodiment in which multiple mutations at a locus are detected." D.I. 239, 6 (citing D.I. 53, 18; D.I. 64, 14; D.I. 68, 159-

160, 164-65) (emphasis in original). Guardant did not object to the R&R's findings with respect to these claim terms. *See* D.I. 255. Moreover, Guardant offers no contradictory evidence and no citation to the specification where such support may be found. Dr. Gabriel, FMI's expert, and Dr. Harismendy, PGDx's expert, testified unequivocally that nothing in the specification or the prosecution histories discloses that multiple mutation types may be detected at a single locus. D.I. 59, ¶¶57-59; Ex. 6, ¶¶629-39; Ex. 11, ¶¶113-14; Ex. 8, ¶¶1194-1201; Ex. 12, ¶¶ 439-44. Guardant's expert, Dr. Cooper, offered no opinion pointing to any written description support for the claims.[3] *See* Ex. 5, ¶¶238-49, 602-09; Ex. 9, ¶¶336-40, 351-53; Ex. 10, ¶¶388-391. Rather, Dr. Cooper conceded that "the methods disclosed in the specification identify *one* individual type of mutation at a locus at a time." Ex. 9, ¶352 (emphasis added). There is no genuine issue of material fact that the patents do not describe detecting multiple types of mutations at a single locus.

The Federal Circuit has affirmed summary judgment of invalidity for lack of written description in closely analogous circumstances. *See, e.g.*, *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1377-79 (Fed. Cir. 2009). In *ICU Medical*, certain claims were construed to cover medical valves that could either contain a spike or that were "spikeless." *Id.* at 1376-77. However, it was undisputed that "the specification describes only medical valves with spikes." *Id.* at 1378. Consequently, the court concluded that a POSA "would not understand the inventor . . . to have invented a spikeless medical valve," and thus affirmed summary judgment of invalidity for lack of written description. *Id.* at 1378-79*; see also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346-47 (Fed. Cir. 2005) (affirming summary judgment of invalidity for lack of written

---

[3] Dr. Cooper's analysis improperly conflates written description and enablement. *See* Ex. 9, ¶¶338-40; Ex. 10, ¶390-91. It is axiomatic that a claim "may be enabled even though it has not been described." *Univ. of Rochester,* 358 F.3d at 921; *see Ariad Pharms*., 598 F.3d at 1344. Moreover, "[t]he question is not whether a claimed invention is an obvious variant" of what is disclosed--*e.g.*, whether a POSA would have believed it obvious to detect multiple aberrations at a single position--but whether the claimed invention is **actually described.** *See PowerOasis, Inc.*, 522 F. 3d at 1306.

description where patentee claimed the entire process of creating a "seamless DWT" because "the description of *one method* for creating a seamless DWT does not entitle the inventor … to claim *any and all means* for achieving that objective") (emphasis added); *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 541 F.3d 1115, 1125 (Fed. Cir. 2008) (affirming summary judgment for lack of written description where narrow disclosure failed to support the entire claimed genus).

Likewise here, as argued by Guardant and as construed by the Court, the challenged claims broadly encompass the detection of either one type of mutation at a single locus <u>*or*</u> multiple types of mutations at a single locus, but the specification indisputably describes only the detection of *one* type of mutation at a single locus. Accordingly, claim 2 of the '822 patent, and claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 patent lack adequate written description support for the full scope of the claimed invention. *See ICU Med.*, 558 F.3d at 1378-79. For these reasons, summary judgment should be granted. *See LizardTech,* 424 F.3d at 1346-47; *Stored Value Sols., Inc. v. Card Activation Techs. Inc.*, 499 Fed. Appx. 5, 14 (Fed. Cir. 2012).

### C. Claim 2 of the '822 Patent, and Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 Patent Are Not Entitled to an Earlier Priority Date and Are Invalid Under Section 102(a)

Summary judgment also should be granted that claim 2 of the '822 patent, and claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 patent are not entitled to an earlier priority date and thus are invalid under 35 U.S.C. § 102(a). Guardant bears the burden of establishing entitlement to an earlier priority date, including that the priority applications provide written description support for the relevant claims. *PowerOasis, Inc.*, 522 F.3d at 1305-06.

The '822 patent application was filed on April 20, 2017, and the '992 patent application was filed on March 21, 2016. D.I. 149-2; D.I. 149-4. Guardant has claimed that the '822 patent is entitled to a priority date of September 4, 2012, and the '992 is entitled to a priority date of March 5, 2014, but Guardant has provided no evidence or expert testimony to support its assertions. Instead,

Guardant has pointed merely to limited portions of the priority specifications that generically list different genetic aberrations. Ex. 4, 15 (citing Ex. 2, ¶¶[0008], [0017], [0095]), 25 (citing Ex. 3, ¶¶[0010], [0024], [00305]). These disclosures do not describe detecting *multiple* aberrations at a single locus. *See supra* pp. 3-5. Thus, because there is no evidence of detecting multiple aberrations at a single locus in the priority documents on which Guardant relies, and Guardant bears the burden of proof, summary judgment of no priority is appropriate. *Id.*

Moreover, it is undisputed that Guardant sold its own products, including Guardant360, in 2014, more than a year before the actual filing date of the '822 and '992 patents, and Guardant asserts that Guardant360 practices "all of the Asserted Claims." Ex. 4, 5-6; *see* Ex. 7, ¶555; Ex. 5, ¶¶634-43, 654-57. Thus, upon summary judgment of no priority, there can be no dispute that Guardant's prior sales of Guardant360 invalidate claim 2 of the '822 patent, and claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 patent. *See PowerOasis, Inc.*, 522 F.3d at 1305-06; 35 U.S.C. § 102(a). Summary judgment of invalidity should be granted on this basis as well.

### D. Claims 1-7, 9, 13-15, 18-20, 22, 29-31, and 33 of the '992 Patent Lack Enablement

"Claims are not enabled when, at the effective filing date of the patent, one of ordinary skill in the art could not practice their *full scope* without undue experimentation." *Wyeth*, 720 F.3d at 1384 (emphasis added); *see also Sitrick v. DreamWorks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("[t]he *full scope* of the claimed invention *must* be enabled") (emphasis added). "Enablement is a question of law based on underlying facts" and is amenable to summary judgment where there is no genuine issue as to any material fact. *Wyeth*, 720 F.3d at 1384; *see also Enzo Life Scis., Inc. v. Roche Molecular Sys., Inc.*, 928 F.3d 1340, 1344, 1348 (Fed. Cir. 2019) (affirming summary judgment of lack of enablement). Conclusory expert opinions cannot create a genuine dispute. *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1367 (Fed. Cir. 1997) ("An expert's opinion on

the ultimate legal issue [of enablement] must be supported by something more than a conclusory statement.") (quoting *In re Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991)).

Claim 1 of the '992 patent recites "attaching tags" to "***at least 20%*** of the cfDNA molecules." Dependent claim 12 further limits the method of claim 1 to require "wherein at least 80% of the cfDNA molecules are tagged by the attaching." Thus, to enable the ***full scope*** of claim 1, the patent necessarily must teach how to tag at least 80% of the cfDNA molecules without undue experimentation; merely enabling at least 20% is insufficient. *See Alcon Research, LTD. v. Apotex Inc.*, 687 F.3d 1362, 1368 (Fed. Cir. 2012) ("Because [dependent] claim 2 sets forth a concentration range, that range at a minimum must be included in [independent] claim 1, whatever its limitations."). The '992 patent, however, is purely aspirational and provides no explanation of how to achieve at least 80% tagging, nor any working examples of such efficiency. Ex. 8, ¶¶1202-05; Ex. 12, ¶¶432-35; Ex. 6, ¶¶640-44. Thus, even when viewed in the light most favorable to Guardant, the '992 patent fails to teach a POSA how to make or use the full scope of the claimed invention without undue experimentation. *See MagSil Corp.*, 687 F.3d at 1382-83 (affirming summary judgment of non-enablement of claims to "resistive changes" from "at least 10%" because the full scope encompassed higher percentages "up to infinity" and the specification did not enable "resistive changes reaching even up to 20%, let alone the" higher percentages); *In re Fisher*, 427 F.2d 833, 839 (C.C.P.A. 1970) (full scope of open ended claims reciting potency of "at least" 1.0 were not enabled where specification only disclosed potencies up to 2.3).

Dr. Cooper's conclusory opinions do not establish a genuine dispute. *See Genentech*, 108 F.3d at 1367-68. Dr. Cooper relies on the '992 patent's generic instruction to use a molar excess of adaptors relative to cfDNA, coupled with standard, commercially available protocols and reagents. *See* Ex. 10, ¶¶383-84 (citing '992 patent, 42:50-43:12, 36:48-37:6); Ex. 9, ¶¶334-35. But these

statements do not disclose any particular conditions that can be used to achieve the recited conversion above 80%, as opposed to merely tagging at least 20%. *See* Ex. 12, ¶¶433-35, 437. Similarly, Dr. Cooper never explains how the known prior art protocols could be adjusted based on the '992 patent's teachings to achieve at least 80% tagging. *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1156 (Fed. Cir. 1997) (claim not enabled as a matter of law where patent "merely restate[d] broad general principles…well known in the prior art").

To the contrary, Dr. Cooper concedes that there are specific, "crucial variable[s]," such as the "DNA:adaptor ratio," that would ***not*** be part of a "routine" process and are not as simple as increasing the amount of adaptor relative to the cfDNA to achieve at least 80% tagging. Ex. 10, ¶167. The '992 patent is silent on this supposed "crucial" ratio, instead leaving the artisan to guess which of "over 2x, over 5x, over 10x, over 20x, over 40x, over 60x, over 80x, (e.g., ~100x) molar excess," might result in a tagging percentage above 80%. Indeed, Dr. Cooper cites testimony from multiple witnesses to show that increasing the amount of adaptor relative to the cfDNA is ***not*** simply a matter of routine experimentation, due to "negative effects" such as the possible formation of "adapter dimers."[4] Ex. 10, ¶166. *See MagSil*, 687 F.3d at 1381-82. Thus, at most the '992 patent is an invitation for further research; Guardant is not entitled to claims covering conversion efficiency over 80% without also explaining how to achieve that result. Accordingly, the '992 claims are invalid for lack of enablement. *See ALZA Corp. v. Andrx Pharms., LLC,* 603 F.3d 935, 941 (Fed. Cir. 2010) (claim not enabled where the specification at most provided "a starting point, a direction for further research" and required a POSA to "to engage in an iterative, trial-and-error process to practice the claimed invention").

---

[4] For example, Dr. Cooper opines that one such known negative effect was "that of 'adapter dimer' wherein an excess of adaptors will ligate to each other instead of the target cell-free DNA molecules. This is a recognized problem with using an excess of adaptors." Ex. 10, ¶166.

Case 1:17-cv-01623-LPS-CJB   Document 438   Filed 12/10/19   Page 14 of 15 PageID #: 15517

| | |
|---|---|
| PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A. | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ David A. Bilson* | */s/ Jeremy A. Tigan* |
| John C. Phillips, Jr. (#110)<br>David A. Bilson (#4986)<br>1200 North Broom Street<br>Wilmington, DE 19806<br>(302) 655-4200<br>jcp@pgmhlaw.com<br>dab@pgmhlaw.com | Karen Jacobs (#2881)<br>Jeremy A. Tigan (#5239)<br>Stephen J. Kraftschik (#5623)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>kjacobs@mnat.com<br>jtigan@mnat.com<br>skraftschik@mnat.com |
| *Attorneys for Defendant Personal Genome Diagnostics, Inc.* | *Attorneys for Foundation Medicine, Inc.* |
| OF COUNSEL:<br><br>Joseph R. Re<br>Stephen W. Larson<br>Baraa Kahf<br>KNOBBE, MARTENS, OLSON & BEAR, LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614<br>(949) 760-0404<br><br>William R. Zimmerman<br>KNOBBE, MARTENS, OLSON & BEAR, LLP<br>1717 Pennsylvania Avenue N.W.<br>Suite 900<br>Washington, DC 20006<br>(202) 640-6400<br><br>Yanna S. Bouris<br>KNOBBE, MARTENS, OLSON & BEAR, LLP<br>1925 Century Park East, Suite 600<br>Los Angeles, CA 90067<br>(310) 551-3450<br><br>December 10, 2019 | OF COUNSEL:<br><br>Eric J. Marandett<br>G. Mark Edgarton<br>Sophie F. Wang<br>Diane Seol<br>John C. Calhoun<br>Xing-Yin Ni<br>CHOATE HALL & STEWART LLP<br>Two International Place<br>Boston, MA 02110<br>(617) 248-5000 |

- 9 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 10, 2019, upon the following in the manner indicated:

| | |
|---|---|
| Joseph J. Farnan, Jr.<br>Michael J. Farnan<br>Brian E. Farnan<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff Guardant Health, Inc.* | *VIA ELECTRONIC MAIL* |
| Edward R. Reines<br>Derek C. Walter<br>Christopher M. Pistritto<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA  94065<br>*Attorneys for Plaintiff Guardant Health, Inc.* | *VIA ELECTRONIC MAIL* |
| Justin L. Constant<br>Doug W. McClellan<br>WEIL, GOTSHAL & MANGES LLP<br>700 Louisiana, Suite 1700<br>Houston, TX  77002-2755<br>*Attorneys for Plaintiff Guardant Health, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*
Jeremy A. Tigan (#5239)