**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

GUARDANT HEALTH, INC.,                )
                                       )
                    Plaintiff,         )        C.A. No. 17-1623-LPS
                                       )
v.                                     )
                                       )        <u>**REDACTED - PUBLIC VERSION**</u>
PERSONAL GENOME DIAGNOSTICS,           )
INC.,                                  )
                                       )
                    Defendant.         )

---

**OPENING BRIEF IN SUPPORT OF DEFENDANT PERSONAL GENOME
DIAGNOSTICS, INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT OF ALL PATENTS-IN-SUIT
AND INVALIDITY OF U.S. PATENT NO. 9,840,743**

Of Counsel:

Joseph R. Re
Stephen W. Larson
Baraa Kahf
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404/Fax: (949) 760-9502
Joe.re@knobbe.com
Stephen.larson@knobbe.com
Baraa.kahf@knobbe.com

William R. Zimmerman
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
Tel: (202) 640-6400/Fax: (202) 640-6401
Bill.Zimmerman@knobbe.com

Yanna S. Bouris
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Tel: (310) 551-3450/Fax: (310) 601-1263
Yanna.bouris@knobbe.com

PHILLIPS, GOLDMAN, MCLAUGHLIN &
HALL, P.A.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
dab@pgmhlaw.com

*Attorneys for Defendant Personal Genome
Diagnostics, Inc.*

Dated: December 10, 2019

**TABLE OF CONTENTS**

Page No.

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.   SUMMARY OF ARGUMENTS.................................................................................1

III.  STATEMENT OF FACTS ......................................................................................2

IV.   ARGUMENT......................................................................................................4

    A.    PGDx's Accused Product Does Not Determine a "Consensus
    Sequence," As Required by the '731 Patent ...........................................................4

        1.   The Court Should Adopt PGDx's Construction of
        "Consensus Sequence"......................................................................4

        2.   The Court Should Grant Summary Judgment of No Literal
        Infringement......................................................................................6

        3.   The Court Should Also Grant Summary Judgment of No
        Infringement Under the Doctrine of Equivalents...............................7

    B.    PGDx's Accused Product Does Not "Collapse Sequence Reads,"
    as Required by the '822 and '992 Patents............................................................10

        1.   The Court Should Adopt PGDx's Construction of
        "Collapsing Sequence Reads"..........................................................10

        2.   The Court Should Grant Summary Judgment of No Literal
        Infringement....................................................................................11

        3.   The Court Should Also Grant Summary Judgment of No
        Infringement Under the Doctrine of Equivalents.............................12

    C.    PGDx's Accused Product Does Not "Determine Unique Sequence
    Reads," As Required by '743 Patent Claim 10.....................................................13

        1.   The Court Should Grant Summary Judgment of No Literal
        Infringement....................................................................................13

        2.   The Court Should Grant Summary Judgment of No
        Infringement Under the Doctrine of Equivalents.............................14

**TABLE OF CONTENTS**
*(cont'd)*

Page No.

D.    PGDx's Accused Product Does Not "Quantify Mapped Reads or Unique Sequence Reads," as Required by '743 Patent Claim 1...........................15

E.    PGDx's Accused Product Does Not Produce a Plurality of Sequence Reads from Each Parent/Tagged Polynucleotide, as Required by the '731, '992 and '743 Patents........................................................16

    1.    The Court Should Grant Summary Judgment of No Literal Infringement................................................................................16

    2.    The Court Should Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents......................................17

F.    PGDx's Accused Product Does Not Group Every One of the Sequence Reads, As Required by the '731, '822 and '992 Patents ......................19

    1.    The Court Should Grant Summary Judgment of No Literal Infringement................................................................................19

    2.    The Court Should Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents......................................19

G.    Claims 5–7, 9, 15–17, and 19 of the '743 Patent Are Invalid As Improperly Dependent ...........................................................................20

V.    CONCLUSION.............................................................................................21

# TABLE OF AUTHORITIES

Page No(s).

*Ajinomoto Co., Inc. v. ITC,*
  932 F.3d 1342 (Fed. Cir. 2019)........................................................................................5

*Am. Calcar, Inc. v. American Honda Motor Co., Inc.,*
  651 F.3d 1318 (Fed. Cir. 2011)..........................................................................9, 13, 17

*Augme Techs., Inc. v. Yahoo! Inc.,*
  755 F.3d 1326 (Fed. Cir. 2014)..........................................................................9, 17, 19

*Cytologix Corp. v. Ventana Medical Sys., Inc.,*
  424 F.3d 1168 (Fed. Cir. 2005)........................................................................................5

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.,*
  16 F.3d 394 (Fed. Cir. 1994)............................................................................................9

*Enzo Biochem, Inc. v. Amersham PLC,*
  902 F. Supp. 2d 308 (S.D.N.Y. 2012)...........................................................................17

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
  149 F.3d 1309 (Fed. Cir. 1998)........................................................................................9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
  535 U.S. 722 (2002)............................................................................................... *passim*

*Forest Labs., Inc. v. Abbott Labs.,*
  239 F.3d 1305 (Fed. Cir. 2001)..............................................................................7, 8, 12

*Jahi Issa v. Delaware State University,*
  2019 WL 1781540 (D. Del. Apr. 23, 2019) (Stark, J.) .......................................8, 15

*Johnson & Johnson Assocs. Inc. v. R.E. Serv. Co.,*
  285 F.3d 1046 (Fed. Cir. 2002) (*en banc*) ...................................................................18

*Masimo Corp. v. Philips Elecs. N. Amer. Corp.,*
  2013 WL 1332606 (D. Del. Apr. 2, 2013), *aff'd by* 62 F. Supp. 3d 368 (D.
  Del. Mar. 31, 2014).......................................................................................................17

*Moore U.S.A., Inc. v. Standard Register Co.,*
  229 F.3d 1091 (Fed. Cir. 2000)..............................................................................17, 19

*MorphoSys AG v. Janssen Biotech, Inc.,*
  358 F. Supp. 3d 354 (D. Del. 2019) (Stark, J.) .....................................................9, 18

**TABLE OF AUTHORITIES**
*(cont'd)*

Page No(s).

*Omega Eng'g, Inc. v. Raytek Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003)....................................................................................16

*Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.,*
   2019 WL 1056276 (D. Del. Mar. 6, 2019) ...............................................................5, 6

*Pfizer, Inc. v. Ranbaxy Labs., Ltd.,*
   457 F.3d 1284 (Fed. Cir. 2006).................................................................................20, 21

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,*
   170 F.3d 1373 (Fed. Cir. 1999).............................................................................8, 12, 18

*Planet Bingo, LLC v. GameTech Int'l, Inc.,*
   472 F.3d 1338 (Fed. Cir. 2006)......................................................................................9

*Primos, Inc. v. Hunter's Specialties, Inc.,*
   451 F.3d 841 (Fed. Cir. 2006).......................................................................................20

*Princeton Digital Image Corp. v. Ubisoft Entertainment SA,*
   2018 WL 5818534 (D. Del. Nov. 7, 2018) ....................................................................5

*Research Plastics, Inc. v. Fed. Packaging Corp.,*
   421 F.3d 1290 (Fed. Cir. 2005)..................................................................................8, 18

**TABLE OF AUTHORITIES**

35 U.S.C. § 112.................................................................................................................20

Fed. R. Civ. P. 37...............................................................................................................8

## I. **NATURE AND STAGE OF THE PROCEEDINGS**

This is a patent case between Guardant Health, Inc. ("Guardant") and Personal Genome

Diagnostics, Inc. ("PGDx"). PGDx asserts counterclaims of non-infringement, invalidity, and

unenforceability, as well as *Walker Process* counterclaims based on Guardant's fraud before the

USPTO. Claim construction is complete as to certain claim terms. PGDx now moves for summary

judgment of non-infringement of U.S. Patent Nos. 9,598,731, 9,834,822, 9,902,992, and 9,840,743

(collectively, the "Patents-in-Suit"), and summary judgment of invalidity of Claims 5–7, 9, 15–17,

and 19 of the '743 Patent.[1]

## II. **SUMMARY OF ARGUMENTS**

1.       PGDx's PlasmaSelect 64 (the "Accused Product") does not literally infringe the

Patents-in-Suit because it (1) does not determine a "consensus sequence," (2) does not "collaps[e]

sequence reads," and (3) does not determine "unique sequence reads." The Parties do not dispute

the operation of the Accused Product, but rather the meaning of these claim terms. Upon adopting

PGDx's constructions, there is no dispute the Accused Product does not literally infringe.

Guardant's doctrine-of-equivalents arguments are barred by prosecution-history estoppel and the

doctrines of claim vitiation and specific exclusion.

2.       The Accused Product does not literally infringe the Patents-in-Suit because there is

no dispute it does not generate a "plurality of sequence reads" for every parent polynucleotide.

Guardant's doctrine-of-equivalents arguments are barred by prosecution-history estoppel, claim

vitiation and specific exclusion, and the disclosure-dedication rule.

---

[1]       In a separate filing, PGDx is jointly moving with Foundation Medicine, Inc. for summary
judgment of invalidity of the '731, '822, and '992 Patents.

3.      The Accused Product does not infringe the '731, '822 and '992 Patents because there is no dispute it does not "group" every one of "the sequence reads" referenced in prior claim steps. Guardant's doctrine-of-equivalents arguments are barred by the doctrines of claim vitiation and specific exclusion, and the disclosure-dedication rule.

4.      Claims 5–7, 9, 15–17, at 19 of the '743 Patent are invalid as a matter of law because they improperly expand the scope of the claims from which they depend.

### III.  STATEMENT OF FACTS

The Patents-in-Suit are directed to methods for detecting genetic variations in DNA fragments. *See* D.I. 20-1–20-4. DNA analysis may result in errors when DNA fragments are incorrectly "amplified" (i.e., copied) or when the amplified copies are then "sequenced" (i.e., the order of bases is determined). Ex. 1 ¶ 35.[2] The Patents-in-Suit generally address such errors by cleaning up *all* the data, identifying or recreating the *complete* sequences of polynucleotides, and then analyzing those sequences to determine the existence of genetic variations. *Id.* ¶ 42.

Three of the four Patents-in-Suit—the '731, '822 and '992 Patents—generally (1) attach "barcode" tags (an additional piece of DNA) to polynucleotides, (2) generate *two or more* sequence reads from *each* of the tagged polynucleotides, (3) group *all* of the "sequence reads" into families based on their barcodes; and then (4) compare, or "collapse" them to determine "consensus sequences"—complete *sequences* representing original DNA molecules. D.I. 20-1 at Claim 1; D.I. 20-2 at Claim 1; D.I. 20-4 at Claim 1; Ex. 1 ¶ 34.

For example, a family might have the following sequence reads: (1) TGAGTATAGA; (2) TTAGTATAGA; and (3) TGAGTATAGA. These "reads" are identical except, in (2), the base in

---

[2]      Exhibits 1–3 are attached to the Declaration of Dr. Olivier Harismendy. Unless otherwise stated, all other exhibits are attached to the Declaration of Baraa Kahf.

the second position is a "T" instead of a "G." That difference may be the result of amplification or sequencing errors. Because the grouped sequence reads all originated from a polynucleotide with the *same* barcode "tag," they are "collapsed" into a single "consensus sequence" that best represents the sequences of the three grouped sequence reads: TGAGTATAGA. The base at the second position is a "G" because it best represents the family (two versus one) and is therefore likely the correct base in the original tagged DNA molecule. *See* Ex. 1 ¶ 35. After determining a "consensus sequence," the '731, '822 and '992 Patents use that sequence to determine or quantify genetic variations that may indicate cancer. *See, e.g.*, D.I. 20-1 at Claim 1.

The fourth Patent-in-Suit—the '743 Patent—does not use "barcode" tags, group sequence reads into families, or determine consensus sequences. D.I. 20-3 at Claim 10. However, it similarly generates *two or more* sequence reads from each polynucleotide. *Id.* The '743 Patent then "determin[es] unique sequence reads" from among the sequence reads corresponding to particular polynucleotides. *Id.*[3] The '743 Patent then analyzes the "unique sequence reads" for genetic variants and performs additional data analysis of such genetic variation. *Id.*

PGDx's method is fundamentally different from both of the above approaches. Rather than determine consensus or unique sequence reads that represent *entire* polynucleotides, PGDx ████████████████████████████████████████████████ Ex. 1 ¶¶ 36, 85. PGDx's Accused Product does *not* (1) generate *two or more* sequence reads from *each* of the tagged polynucleotides, or (2) group *all* of the "sequence reads" into families based on their barcodes. *Id.* ¶¶ 36–37, 62, 75. Instead, PGDx ████████████████████████████████████. *Id.* ¶¶ 42, 104. PGDx's approach is more

_____

[3]    PGDx here discusses Claim 10 of the '743 Patent, which is directed to detecting nucleotide variation. Claim 1 of the '743 Patent is directed to copy number variation and is discussed below.

efficient because ███████████████████████████, and does not determine *entire*

polynucleotide *sequences*. *Id.* ██████████████████████. *Id.*

## IV. ARGUMENT

Guardant does not dispute the operation of the Accused Product. Guardant instead attempts

to contort its claims to argue (1) a *single* base is somehow a *"sequence"* of multiple bases; (2)

similar sequence reads in a *group* are somehow *"unique* sequence reads"; (3) *one* sequence read

is somehow *"two or more"* sequence reads; and (2) *not* grouping every sequence read is somehow

grouping *"every"* sequence read. Essentially, Guardant seeks to convince this Court that black is

white, up is down, and that Guardant's claims somehow cover PGDx's fundamentally different

technology. Guardant's contentions defy common sense and are contrary to the express language

of the claims, this Court's claim constructions, and Guardant's representations to the public.

**A.    PGDx's Accused Product Does Not Determine a "Consensus Sequence," As
        Required by the '731 Patent**

    **1.    The Court Should Adopt PGDx's Construction of "Consensus Sequence"**

There is no material dispute as to the relevant functionality of the Accused Products. *See,*

*e.g.*, Ex. 8 at 1016:18–1017:3, 1043:18–1044:16. The only dispute is the meaning of the term

"consensus sequence." PGDx's expert believes a "consensus sequence" must be multiple

nucleotides. Ex. 1 ¶ 96 ("The dictionary's discussion ... does not suggest that a consensus

sequence can be a single base . . . A consensus sequence cannot be a single base"), ¶ 104.

Guardant's expert contends that a "consensus sequence" can be a single base. Ex. 4

¶¶ 237–38 ("As this definition [of 'consensus sequence'] makes clear, the term 'sequence' is

understood in the art to refer to a single position or base"), 465 (referencing analysis of ¶¶ 237–

38). Guardant's expert openly acknowledged this claim construction dispute at his deposition.

*See* Ex. 7 at 765:3–769:21 ("Q. So it's fair to say that you disagree with PGDx's claim construction

for consensus sequence offered in this case? A. *Yes*, I think that's fair to say.").[4]  This construction

dispute *cannot* be presented to the jury. *See Cytologix Corp. v. Ventana Medical Sys., Inc.*, 424

F.3d 1168, 1172 (Fed. Cir. 2005) ("[T]he parties ... presented expert witnesses who testified before

the jury regarding claim construction, and counsel argued conflicting claim constructions to the

jury. This was *improper. . . .*").

    The Court should adopt PGDx's proposed construction for "consensus sequence" as

meaning "[t]he string of nucleotides that represents a set of multiply aligned sequence reads

derived from the same parent polynucleotide." D.I. 359 at 3. PGDx's construction resolves the

Parties' dispute by clarifying a consensus sequence is a "string of nucleotides," i.e., *multiple*

nucleotides or bases. Guardant previously agreed with the substance of PGDx's construction. *See*

D.I. 85 at 50:23–51:1. Indeed, this Court declined to construe "consensus sequence" on the ground

that there was no "ripe dispute" about claim scope "at [that] time." D.I. 359 at 3–4.[5]  Guardant's

new claim construction position is driven by its need to capture the Accused Product.

    PGDx's construction is consistent with the ordinary meaning of "consensus sequence"

from dictionaries and court decisions. *See* D.I. 68 at 11 (a "consensus sequence" is "a string of

nucleotides or amino acids which best represents a set of multiply aligned sequences"); *Pac.

Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, 2019 WL 1056276 at *5 (D. Del. Mar. 6,

2019) ("consensus sequence" is "the most likely actual nucleotide sequence for the region of

interest"); *Ajinomoto Co., Inc. v. ITC*, 932 F.3d 1342, 1360 n.10 (Fed. Cir. 2019) ("The consensus

sequence is a specific nucleotide sequence that appears in the promoters associated with many

---

[4]     All emphasis is added unless otherwise noted.

[5]     Following this Court's guidance, PGDx brought the Parties' dispute to the Court's
attention. D.I. 361. *See Princeton Digital Image Corp. v. Ubisoft Entertainment SA*, 2018 WL
5818534 at *2 (D. Del. Nov. 7, 2018).  In an abundance of caution, PGDx also filed objections.
D.I. 378.

different genes in the genome of a particular organism."). It is also consistent with the specification, which distinguishes between "[1] a base or [2] *sequence* of bases," D.I. 20-1 at 51:4–6, and between "[1] *sequences* or [2] fragments of sequences," *id.* at 37:10–11. If a "sequence" could be a single base, a "fragment" of a sequence could be a fragment of a single base. Guardant's position is absurd and contrary to its own patent specification.

Guardant's position is also inconsistent with the Court's prior claim constructions. The Court construed "sequence read" as "the *order* of the base*s* of a *poly*nucleotide determined by a sequencer." D.I. 354 at 9. The Court also distinguished between a single "nucleotide" and a "sequence" of nucleotides by construing a "barcode" as "a nucleotide *or a sequence* of nucleotide*s* used as a tag or identifier." *Id.* at 13. Guardant did not object to these constructions, which Chief Judge Stark adopted. D.I. 403. These constructions make sense. A "sequence" refers to the "particular order in which related things follow each other."[6] A sequence cannot be a single base.

Using the Court's claim constructions, the claim at issue here requires: "comparing the sequence reads [i.e., the order of the base*s* of a polynucleotide] ... to determine consensus sequences," each of which "corresponds to a unique *poly*nucleotide." D.I. 20-1 at 62:37–42. This Court's prior constructions make clear that a "consensus sequence"—like the "sequence reads" from which it is derived, and the "polynucleotide" it represents—contains *multiple* bases.

## 2. The Court Should Grant Summary Judgment of No Literal Infringement

There is no dispute the Accused Product does not determine a "consensus sequence" consisting of *multiple bases*. Guardant's expert, Dr. Cooper, opined that the Accused Product ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 4 ¶¶ 223 ("PGDx ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[6]   *See, e.g.,* https://www.lexico.com/en/definition/sequence (last accessed Dec. 7, 2019).



██████████████████████"), 465 (referencing analysis of ¶ 223); Ex. 5 ¶¶ 43–44.  Dr.

Cooper acknowledged ███████████████████████████████████████████████████████

███████████████████████████████████   Ex. 8 at 1035:21–1036:2; *see id.* at

1111:5–15.  Indeed, Dr. Cooper identified ***nothing*** in PGDx's source code that determines a

sequence of multiple bases.  *See, e.g., id.* at 1074:4–13, 1076:11–25, 1079:1–19 ("What I've said

I didn't have is here is the line of source code where we, quote, unquote, determined a consensus

sequence").  PGDx's expert, Dr. Harismendy, agrees that the Accused Product ████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████   Ex. 1 ¶ 164; *see also id.* ¶¶ 36, 85, 92.  Thus, the

Court should grant summary judgment of no literal infringement of the '731 Patent.

### 3. The Court Should Also Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents

Guardant cannot prevail under the doctrine of equivalents for two reasons.  First,

Guardant's claim amendments and arguments during prosecution foreclose Guardant's doctrine-

of-equivalents arguments.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S.

722, 740 (2002) (narrowing amendments create a presumption the patentee surrendered the entire

territory between the original and amended claim limitation); *Forest Labs., Inc. v. Abbott Labs.*,

239 F.3d 1305, 1314 (Fed. Cir. 2001) ("Even if it was not necessary to secure allowance of the

claim . . . a statement [made during prosecution] may operate to preclude the patentee from

claiming otherwise in an infringement suit.").

When prosecuting the application that became the '731 Patent, the Examiner rejected the

claims over the "Sparks" prior art.  Ex. 11 at PGDX0168505–20.  Guardant argued Sparks does

***not*** teach a consensus sequence.  *Id.* at PGDX0168124.  The Examiner then rejected the claims as

obvious over Sparks in view of the "Rava" prior art.  *Id.* at PGDX0168069–82.  Guardant amended

the claims to require determining the consensus sequences by comparing sequence reads "to each other" and "identifying consensus sequences that map to a given locus." *Id.* at PGDX0168031. Guardant argued the prior art does not teach (1) "the determination of ***consensus sequences***, which represent the consensus of potentially different sequence reads generated from a single original polynucleotide during a process of amplification and subsequent sequencing of the amplified molecules," (2) "grouping the plurality of sequence reads produced from each non-uniquely tagged parent polynucleotide into families," or (3) "comparing the sequence reads grouped within each family to each other to determine ***consensus sequences*** for each family." *Id.* at PGDX0168038–42. The claims issued thereafter. *Id.* at PGDX0168020.

Guardant's arguments evidence a clear surrender of methods not involving the claimed collapsing method. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999); *Forest Labs.*, 239 F.3d at 1314. Moreover, Guardant's claim amendments create a presumption that Guardant surrendered the entire territory between the original and the amended claims, including any equivalent that examines and focuses on single base positions. *See Festo*, 535 U.S. at 740. To overcome this presumption, Guardant must show the alleged equivalent (1) "could not have reasonably been described at the time the amendment was made," (2) "was tangential to the purpose of the amendment," or (3) "was not foreseeable (and thus not claimable) at the time of the amendment." *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005). Guardant cannot overcome this presumption because it identified ***no*** such argument or evidence in response to PGDx's discovery requests seeking such contentions. Ex. 10 (Guardant interrogatory response) at 6–7; Ex. 17 (PGDx interrogatory response disclosing prosecution history estoppel allegations) at 93–101; *see* Fed. R. Civ. P. 37(c)(1); *Jahi Issa v. Delaware State University*, 2019 WL 1781540 at *7 (D. Del. Apr. 23, 2019) (Stark, J.) (rejecting

-8-

party's reliance on information and granting summary judgment where party failed to provide that information in response to interrogatory).

Second, Guardant's arguments are barred by the doctrines of claim vitiation and specific exclusion. The vitiation concept has its clearest application "where the accused device contain[s] the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006). Put differently, "equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 400 (Fed. Cir. 1994). Subject matter is "specifically excluded" if "its inclusion is somehow inconsistent with the language of the claim." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998). The Federal Circuit has found this "specific exclusion" principle to apply where, for example, "the patentee seeks to encompass a structural feature that is the opposite of, or inconsistent with, the recited limitation." *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1336 (Fed. Cir. 2014).

Here, Guardant asserts that determining a *single* base can somehow satisfy the requirement of determining a "sequence" of *multiple* bases. *See* Ex. 4 ¶¶ 237–38; *id.* ¶ 465 (referencing analysis of ¶¶ 237–38); *see also* Ex. 7 at 765:3–22. Determining one base, however, is the antithesis of determining more than one base. *See Am. Calcar, Inc. v. American Honda Motor Co., Inc.*, 651 F.3d 1318, 1339 (Fed. Cir. 2011) ("finding a signal from *one source* to be equivalent to 'signals from a *plurality of sources*' would vitiate that claim limitation by rendering it meaningless"). Indeed, a single base is inconsistent with a "sequence"—a single base cannot be a "sequence," and a sequence cannot be a single base. *See MorphoSys AG v. Janssen Biotech, Inc.*, 358 F. Supp. 3d 354, 362 (D. Del. 2019) (Stark, J.) ("given that a human antibody cannot also be a humanized antibody (and vice versa), the terms are 'inconsistent with each other'" and cannot

be equivalents). Moreover, the specification specifically distinguishes between "[1] a base *or* [2] *sequence* of bases." D.I. 20-1 at 51:4–6. Guardant knew how to claim this subject matter; it simply chose not to do so. The doctrine of equivalents does not apply. *See Festo*, 535 U.S. at 740. Thus, the Court should grant summary judgment of no infringement of the '731 Patent.

**B.     PGDx's Accused Product Does Not "Collapse Sequence Reads," as Required by the '822 and '992 Patents**

**1.     The Court Should Adopt PGDx's Construction of "Collapsing Sequence Reads"**

The Parties do not dispute the function of the Accused Product, but rather the meaning of the term "collapsing sequence reads." *See, e.g.* Ex. 8 at 1016:18–1017:3; Ex. 1 ¶¶ 96, 104; Ex. 4 ¶¶ 237–38. PGDx's expert believes this process must result in a consensus sequence with multiple nucleotides. Ex. 1 ¶¶ 96, 104. Guardant's expert believes it can result in a single base. Ex. 4 ¶¶ 237–38. Guardant's expert once again openly acknowledged this claim construction dispute, which cannot be presented to a jury. *See* Ex. 7 at 769:22–771:7 ("Do you disagree with [PGDx's] construction? A. I think I disagree. I think, again, it's narrow.").

The Court should adopt PGDx's proposed construction for "collapsing sequence reads in each family" as meaning "converting the polynucleotide sequence reads in each family into a single polynucleotide sequence that represents the sequence reads in the family." D.I. 359 at 7. PGDx's construction simply confirms this step is the same as creating a "consensus sequence." Guardant has never asserted these terms have different meanings. D.I. 387 at 7; *see also* Ex. 4 ¶ 212 (equating collapsing sequence reads with determining consensus sequences); Ex. 5 ¶ 57 (same). Moreover, the Patents-in-Suit repeatedly equate the terms. *See, e.g.,* D.I. 20-2 at 5:61–64, 7:66–8:4, 8:13–17, 11:10–14, 22:38–43, 31:60–32:15, 32:43–53, 33:57–34:18, 34:15–17, 43:18–30, 45:51–63, 48:17–19, 49:64–67, 57:47–48, 60:1–5. Indeed, every time the specification

refers to "collapsing sequence reads," it refers to creating a "consensus sequence." *Id.* at 32:2–4, 9–10; D.I. 20-4 at 32:12–14, 19–22.

Guardant agrees both terms refer to the same thing. D.I. 387 at 7–8. However, Guardant now argues that both terms encompass determining a single base because the "collapsing" claim limitation states "collapsing sequence reads to make a base call." *Id.* That a base call is made *after* "collapsing sequence reads" does not change the ordinary meaning of "collapsing sequence reads" or "consensus sequence." Ex. 9 at 220:15–17. Of course, the ultimate goal of the claimed methods includes examining single nucleotide variations. But the claims employ specific error correction methods to achieve that result. Guardant previously agreed to the substance of PGDx's construction during the *Markman* proceedings. *See, e.g.,* D.I. 85 at 50:23–51:1.[7] This Court even concluded there was no "ripe dispute" about claim scope "at [that] stage." D.I. 359 at 4, 9.[8] Guardant's recent change of heart is a last-ditch attempt to capture the Accused Product.

## 2.     The Court Should Grant Summary Judgment of No Literal Infringement

Upon adopting PGDx's construction, the Court should grant summary judgment of no infringement for the reasons discussed above. *See* Section IV.A.2, *supra*. The Accused Product does not determine consensus sequences with multiple bases. *See id.* Indeed, even if the Court were to disagree with PGDx's construction, summary judgment would still be warranted. At his deposition, Dr. Cooper testified the claims require "merging or integrating *all of the information from the reads* that are in the family," Ex. 8 at 966:4–16; *see id.* at 964:20–965:6 ("the word collapse here means that you are merging *all the information* into a single representation"). Yet,

---

[7]     Guardant argued that substituting the term "converting" for "collapsing" is unnecessary. D.I. 359 at 8. But the term "converting" is not critical to this construction, nor is it necessary to resolve the Parties' dispute on summary judgment.

[8]     Upon identifying the Parties' claim construction dispute, PGDx brought the dispute to the Court's attention, D.I. 361, and in an abundance of caution, filed objections. D.I. 378.

Dr. Cooper admitted the Accused Product does *not* use all of the information from the sequence

reads in a particular family. *See id.* at 1036:25–1037:16 (" 

."); Ex. 4 ¶ 223 ("PGDx does

not use the entire sequence fragment in its analysis" when it "analyzes 'redundant observations'

of individual positions"). Guardant's expert's testimony compels summary judgment.

### 3.     The Court Should Also Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents

Guardant's doctrine-of-equivalents arguments once again contradict its representations to

the public and the subject matter its claims specifically exclude. First, when prosecuting the

application that became the '992 Patent, the Examiner rejected the claims as obvious over a

combination of references. Ex. 13 at PGDX0149655–74. To overcome the rejection, Guardant

amended the claims to require "collapsing sequence reads in each family." *Id.* at PGDX0149569–

70. Guardant distinguished the amended claims from the prior art based on these limitations, and

the examiner allowed the claims. *Id.* at PGDX0149577, PGDX0149580–81, PGDX0149519.

Similarly, when prosecuting the application that became the '822 Patent, the Examiner found the

prior art disclosed collapsing sequence reads. Ex. 12 at PGDX0318094. In response, Guardant

distinguished the prior art and argued it did not teach "collapsing sequence reads in each family,"

*id.* at PGDX0318767–69, which the Examiner found persuasive. *Id.* at PGDX0318607.

Guardant's arguments evidence a clear surrender of methods not employing the claimed

collapsing method. *See Pharmacia*, 170 F.3d at 1377; *Forest Labs.*, 239 F.3d at 1314. Moreover,

Guardant's amendments foreclose any equivalent that examines and focuses on single base

positions. Ex. 10 at 6–7; *Festo*, 535 U.S. at 740.

Second, the doctrines of claim vitiation and specific exclusion apply here for all the reasons they apply to Guardant's attempt to circumvent the requirement of a "consensus sequence." Dr. Cooper opines that examining a single base position can satisfy the requirement of "collapsing sequence reads." Ex. 4 ¶¶ 237–38; Ex. 7 at 769:22–771:7. The claims, however, require collapsing *sequence* reads (consisting of multiple bases) yielding a consensus *sequence* (consisting of multiple bases). *See Am. Calcar*, 651 F.3d at 1339. Such language specifically excludes examining the antithesis of multiple bases: a single base. Thus, the Court should grant summary judgment of no infringement of the '822 and '992 Patents.

**C.**  **PGDx's Accused Product Does Not "Determine Unique Sequence Reads," As Required by '743 Patent Claim 10**

**1.**  **The Court Should Grant Summary Judgment of No Literal Infringement**

Guardant cannot show the Accused Product "determin[es] unique sequence reads corresponding to the extracellular polynucleotides from among the sequence reads." PGDx's single-base approach does not even determine "sequence reads" under this Court's construction of that term: "the *order* of the base*s* of a *poly*nucleotide determined by a sequencer." D.I. 354 at 9. Obviously, a method that does not determine "sequence reads" cannot determine "unique sequence reads." *See* Ex. 5 ¶ 44; Ex. 8 at 1035:21–1036:2, 1111:5–15; Ex. 1 ¶¶ 36, 85, 92.

In an attempt to overcome this deficiency, Guardant points to a different step in PGDx's method that allegedly groups sequence reads into families. Ex. 4 ¶ 382. According to Guardant, ██████████████████████████████████ somehow satisfies "determining *unique* sequence reads . . . from among the sequence reads." *Id.* Guardant argued during claim construction that, "in the claim language, one determines a group (plural) of unique sequence reads from among a group (plural) of sequence reads that corresponds to a group (plural) of extracellular

polynucleotides." D.I. 59 at 20. Guardant's construction is incorrect for all of the reasons PGDx previously identified. *See* D.I. 68 at 14–15; D.I. 74 at 11–12; D.I. 351 at 1–2; D.I. 361 at 2–3.[9]

In deciding to institute *inter partes* review of the '743 Patent, the USPTO "agree[d] with Patent Owner that the term 'unique sequence reads' refers to a *specific* read or sequence read." D.I. 351, Ex. 1 at 11. Thus, the USPTO "construe[d] the term 'unique sequence read' to mean <u>a</u> sequence read that contains unique sequences, such that the sequences can be identified without the need for a barcode." *Id* at 12. The USPTO rejected Guardant's "grouping" theory, finding the use of barcodes to "group similar DNA fragments" was "the *opposite* of a unique sequence read as the term is used in the '743 patent." *Id.* at 28–29, 31–32.

The Court should therefore construe "determine unique sequence reads" to require sequence reads that are (1) unique, (2) determined from "among" the existing sequence reads, and (3) represent an extracellular polynucleotide. D.I. 68 at 14–15. Upon adopting this construction, the Court should grant summary judgment of no literal infringement. As PGDx's expert explained, Guardant identifies nothing in PGDx's process that determines individual "sequence reads" that are "unique" and selected "from among the sequence reads." *See* Ex. 1 ¶¶ 165, 167. Dr. Cooper does not allege infringement under PGDx's construction and instead conflates "unique sequence reads" with *grouping* sequence reads. Ex. 4 ¶ 382.

### 2. The Court Should Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents

Guardant's doctrine-of-equivalents arguments fail as a matter of law for two reasons. First, prosecution-history estoppel again applies and bars Guardant's theories. During prosecution, the examiner found the prior art taught all of the claimed limitations. Ex. 14 at PGDX0140249.

---

[9]   The Court previously declined to construe "unique sequence reads," but invited the Parties to address the issue on summary judgment. D.I. 402 at 2 n.2.

Guardant amended pending Claim 11 (which corresponds to issued Claim 10) to require "determining unique sequence reads corresponding to the extracellular polynucleotides from among the sequence reads." *Id.* at PGDX0140187–88. Guardant argued this "unique" limitation distinguished the prior art method of counting sequence tags corresponding to a chromosome segment of interest. *Id.* at PGDX0140191. The examiner agreed and allowed the claim. *Id.* at PGDX0140145. Guardant's argument evidences a clear surrender of claim scope, and Guardant's amendment creates a presumption Guardant cannot rebut because it did not do so in response to PGDx's discovery requests. *See Jahi Issa*, 2019 WL 1781540 at *7.

Second, the doctrines of claim vitiation and specific exclusion again apply. Guardant claims the "unique sequence reads" limitation is satisfied by "group[ing] sequence reads into families. . . ." Ex. 4 ¶¶ 382–89. But a "group" of similar items is the antithesis of something "unique." *Compare* D.I. 68, Ex. 2 ("unique" is the "only one"), *with id.*, Ex. 3 (defining "group"); *see also* Ex. 1 ¶ 166. The PTAB found grouping to be "the *opposite* of a unique sequence read as the term is used in the '743 patent." D.I. 351, Ex. 1 at 28–29, 31–32. The Court should grant summary judgment of no infringement of Claim 10 of the '743 Patent and dependent claims.

**D.** **PGDx's Accused Product Does Not "Quantify Mapped Reads or Unique Sequence Reads," as Required by '743 Patent Claim 1**

The Court should also grant summary judgment of no literal infringement of Claim 1 of the '743 Patent. Unlike Claim 10 of the '743 Patent, which is directed to nucleotide variation, Claim 1 is directed to a method for detecting "copy number variation" (i.e., examining the variation in the number of copies of a particular gene). Like Claim 10, however, Claim 1 examines "*sequence* reads" and requires "quantify[ing] mapped reads or unique sequence reads."[10] As

---

[10]     The "mapped reads" refer to the "mapped sequence reads" from the previous limitation, step (c), which requires "mapping the plurality of sequence reads to a reference sequence."

discussed, the Court construed "sequence read," as "the *order* of the base*s* of a *poly*nucleotide determined by a sequencer." D.I. 354 at 9.  The Accused Product does not practice this step because it examines *single bases* and does not quantify the mapped or unique "order of bases of a polynucleotide determined by a sequencer." *See* Ex. 1 ¶¶ 148–49.

Dr. Cooper provided no opinion of how an examination of a single base could satisfy this limitation. *See* Ex. 4 ¶ 342; *see also* Ex. 1 ¶ 150.  Dr. Harismendy opined that the Accused Product

███████████████████████████████████████████████████

███████████.  *See* Ex. 1 ¶ 149.  Dr. Cooper failed to address Dr. Harismendy's opinion and presented *no* doctrine-of-equivalents analysis. *See* Ex. 5 ¶¶ 91–95 (addressing step (a) only); Ex. 4 ¶¶ 340–45.  Accordingly, the Court should grant summary judgment of no infringement of Claim 1 of the '743 Patent and dependent claims.

**E.**   **PGDx's Accused Product Does Not Produce a Plurality of Sequence Reads from Each Parent/Tagged Polynucleotide, as Required by the '731, '992 and '743 Patents**

**1.**   **The Court Should Grant Summary Judgment of No Literal Infringement**

There is no dispute the Accused Product does not infringe under this Court's construction of "plurality" and "each."  This Court correctly construed (1) "a plurality of sequence reads from each" polynucleotide in Claim 1 step (d) of the '731 Patent to require producing "*two or more* sequence reads for *every one* of the parent polynucleotides from step (c)," and (2) Claim 1 step (d) of the '992 Patent as requiring producing "*two or more* sequence reads for *every one* of the parent polynucleotides that is sequenced." D.I. 402 at 33.

Although not construed by the Court, the same interpretation should apply to Claim 1 step (a) and Claim 10 step (a) of the '743 Patent, which refer to "sequencing extracellular polynucleotides . . . wherein *each* of the extracellular polynucleotides generates a *plurality* of sequence reads." *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003)

(courts presume that the same claim term in one patent means the same thing in related patents); *Enzo Biochem, Inc. v. Amersham PLC*, 902 F. Supp. 2d 308, 323–325 (S.D.N.Y. 2012) (granting summary judgment of no infringement based on term not previously construed for patent at issue).

Dr. Cooper did not opine there is literal infringement under the above claim constructions. *See* Ex. 4 ¶ 166; Ex. 5 ¶ 13. Dr. Harismendy explained the Accused Product does not infringe because it does not produce two or more sequence reads for every one of the parent polynucleotides from step (c). *See* Ex. 1 ¶¶ 62, 64–65. Instead, it always produces at least one instance in which a single or no sequence read corresponds to a parent polynucleotide. *See id.* ¶ 62. Thus, the Court should grant summary judgment of no literal infringement

### 2.       **The Court Should Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents**

Guardant's doctrine-of-equivalent arguments are again barred by the doctrines of claim vitiation and specific exclusion.    Producing sequence reads from *some* of the parent polynucleotides is "the opposite of" and "inconsistent with" producing sequence reads "*from each*" parent polynucleotide. *See Augme Techs.*, 755 F.3d at 1335; *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("[I]t would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.").

Likewise, broadening the claim to encompass producing only a *single* sequence read is the "opposite" of" and "inconsistent with" producing a "*plurality* of sequence reads" from each parent polynucleotide. *See* Ex. 1 ¶ 64; *Am. Calcar*, 651 F.3d at 1339 ("finding a signal from one source to be equivalent to 'signals from a plurality of sources' would vitiate that claim limitation by rendering it meaningless"); *Masimo Corp. v. Philips Elecs. N. Amer. Corp.*, 2013 WL 1332606 at *66 (D. Del. Apr. 2, 2013) (rejecting "equivalency argument [which] effectively eliminate[d]

-17-

'evaluating ... second spectral values'"), *affirmed in relevant part by* 62 F. Supp. 3d 368, 393 (D. Del. Mar. 31, 2014).

Moreover, the disclosure-dedication rule bars Guardant's position. Under that rule, "the doctrine of equivalents is unavailable for subject matter disclosed in a patent but not included in the claims at issue." *MorphoSys*, 358 F. Supp. 3d at 362; *see Johnson & Johnson Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054–55 (Fed. Cir. 2002) (*en banc*). Here, Guardant repeatedly highlighted embodiments in which only a *subset* of molecules produce sequence reads. *See, e.g.*, D.I. 412 at 4 ("the specification discloses embodiments where 'about 68% of the tagged parent polynucleotides' will produce 'a sequence read for at least one of [their] progeny.'"). As this Court summarized, "[i]t is certainly true that, as Guardant notes, the specification also contemplates that only a subset of molecules may produce sequence reads." D.I. 402 at 30 n.15. After highlighting this unclaimed "alternative embodiment," *id.*, Guardant cannot recapture it through the doctrine of equivalents. *See also* Ex. 4 ¶ 166; Ex. 5 ¶ 13. Guardant knew how to claim this subject matter; it simply chose not to do so. The doctrine of equivalents does not apply. *See Festo*, 535 U.S. at 740; *Research Plastics*, 421 F.3d at 1298.

Guardant's arguments are also barred by prosecution-history estoppel. In *inter partes* review, Guardant distinguished prior art on the basis that (1) it does "not disclose the number of reads obtained for each DNA fragment" and (2) it does not produce "a plurality of sequence reads," emphasizing that in the prior art *"[t]he majority of DNA fragments are sequenced once, if at all."* Ex. 15 at 31–32 (emphasis in original). Guardant is foreclosed from recapturing the subject matter it clearly disclaimed. *See Pharmacia*, 170 F.3d at 1377. Accordingly, the Court should grant summary judgment of no infringement of the '731, '992, and '743 Patents.

**F.** **PGDx's Accused Product Does Not Group Every One of the Sequence Reads, As Required by the '731, '822 and '992 Patents**

1. **The Court Should Grant Summary Judgment of No Literal Infringement**

This Court correctly interpreted the "grouping" steps of the '731, '822 and '992 Patents as requiring grouping "every one of the sequence reads" from the prior steps. D.I. 402 at 25–26. Guardant does not even attempt to show literal infringement under this interpretation. Indeed, Dr. Cooper provided no such opinion. *See* Ex. 4 ¶¶ 199–200; Ex. 5 ¶¶ 30–34. Dr. Harismendy explained that the Accused Product does *not* literally practice the grouping step of each patent under the adopted construction because ███████████████████████████████████ ██████████████████. *See* Ex. 1 ¶ 75. Thus, the Court should grant summary judgment of no literal infringement.

2. **The Court Should Grant Summary Judgment of No Infringement Under the Doctrine of Equivalents**

Guardant's doctrine-of-equivalents arguments attempt to establish that *not* grouping "every" sequence read is equivalent to grouping "every" sequence read. *See* Ex. 4 ¶¶ 200–201. *Not* grouping every sequence read, however, is "the opposite of" and "inconsistent with" grouping *every one* of the sequence reads from the prior steps. *See* Ex. 1 ¶ 76. Guardant's theory is again foreclosed by the doctrines of claim vitiation and specific exclusion. *See Augme Techs.*, 755 F.3d at 1335; *Moore U.S.A.*, 229 F.3d at 1106 ("a minority" is "the very antithesis of a majority").

Guardant's position also runs afoul of the disclosure-dedication rule. Guardant has highlighted the existence of specification embodiments that filter out sequence reads before grouping. *See* D.I. 402 at 22–23 (R&R summarizing Guardant's arguments); D.I. 412 at 8 ("And, as Magistrate Judge Burke noted in his report and recommendation, the specification repeatedly contemplates the filtering of sequence reads from the analysis."); D.I. 59 at 12 ("the specification repeatedly discloses embodiments where sequence reads are not placed into a family because they

-19-

are filtered out based on their quality scores.") (quoting D.I. 47-3 at 3:54–56 ("In some embodiments, the method may comprise filtering out reads with an accuracy or quality score of less than a threshold…."); *id.* at 44:42–44 ("Sequencing reads with a quality score at least 90%, 95%, 99%, 99.9%, 99.99% or 99.999% may be filtered out of the data."); Ex. 4 ¶ 199.  Guardant cannot use the doctrine of equivalents to recapture this unclaimed subject matter.  The Court should grant summary judgment of no infringement of the '731, '822 and '992 Patents.

**G.    Claims 5-7, 9, 15-17, and 19 of the ' 743 Patent Are Invalid As Improperly Dependent**

The Court should grant summary judgment of invalidity of certain dependent claims of the '743 Patent.  A dependent claim must be of narrower scope than the independent claim from which it depends.  35 U.S.C. § 112(d).  A dependent claim that broadens, or otherwise omits, an element of the independent claim is invalid for improper dependency.  *See Pfizer, Inc. v. Ranbaxy Labs., Ltd.*, 457 F.3d 1284, 1291–92 (Fed. Cir. 2006).

Here, independent Claims 1 and 10 of the '743 Patent each require a step of "sequencing extracellular polynucleotides from a bodily sample from a subject."  D.I. 20-3.  Dependent Claims 5, 6, 7, and 9 (which depend from Claim 1) and 15, 16, 17, and 19 (which depend from Claim 10) each add a step of attaching barcodes "to the extracellular polynucleotides *or* fragments thereof" (emphasis added).  *Id.*  The disjunctive "or" indicates that, unlike the independent claims, the dependent claims are not limited to just extracellular polynucleotides.  Instead, the dependent claims could exclusively include "fragments" of the extracellular polynucleotides.

Fragments of extracellular polynucleotides are different from extracellular polynucleotides.  This is clear from both the disjunctive claim language and the use of different terms.  *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) (two different words recited in the same claim "cannot mean the same thing," because one "would be

superfluous"). The specification is clear that extracellular polynucleotides are naturally occurring polynucleotides within a bodily fluid within the body. *See, e.g.*, D.I. 20-3 at 2:40-43; D.I. 53-1. "Fragments thereof" are fragments of such extracellular polynucleotides, created after isolation from a bodily sample. *See* D.I. 20-3 at 14:51–52 ("In some embodiments, the methods further comprise fragmenting said isolated extracellular polynucleotides."). The specification repeatedly distinguishes extracellular polynucleotides from "fragments thereof." *Id.* at 3:10–15, 3:25–28, 3:36–39, 15:22–29, 15:36–39, 15:48–50.

Dependent Claims 5–7, 9, 15–17, and 19 of the '743 Patent change the independent claims to read "extracellular polynucleotides *or fragments thereof*," which broadens them to cover sequencing of a completely different pool of polynucleotides. Ex. 2 ¶¶ 1207–11. Indeed, Dr. Cooper testified that fragmenting cell-free DNA via "shearing" yields new pieces of DNA with new properties. *See, e.g.*, Ex. 16 ¶ 98; Ex. 3 ¶¶ 487–88. Dr. Cooper testified that shearing shatters the larger DNA molecules "into smaller pieces" and results in fragments with different properties. Ex. 7 at 738:19–24; 741:3–8. The dependent claims thus improperly broaden the scope of the independent claim from which they depend. *See Pfizer*, 457 F.3d at 1291–92.

## V. **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment of no infringement of all the Patents-in-Suit and invalidity of Claims 5–7, 9, 15–17, at 19 of the '743 Patent.

December 10, 2019

Of Counsel:

Joseph R. Re
Stephen W. Larson
Baraa Kahf
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Joe.re@knobbe.com
Stephen.larson@knobbe.com
Baraa.kahf@knobbe.com

William R. Zimmerman
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
202-640-6412 - Direct
Tel: (202) 640-6400
Fax: (202) 640-6401
Bill.Zimmerman@knobbe.com

Karen Vogel Weil
Yanna S. Bouris
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 601-1263
Karen.weil@knobbe.com
Yanna.bouris@knobbe.com

Respectfully submitted,

By: */s/ John C. Phillips, Jr.*
    PHILLIPS, GOLDMAN, MCLAUGHLIN
    & HALL, P.A.
    John C. Phillips, Jr. (#110)
    David A. Bilson (#4986)
    1200 North Broom Street
    Wilmington, DE 19806
    (302) 655-4200
    jcp@pgmhlaw.com
    dab@pgmhlaw.com

*Attorneys for Defendant Personal Genome Diagnostics, Inc.*

31658209

-22-