

December 3, 2019

**VIA E-FILING**
The Honorable Christopher J. Burke
United States District Court
844 North King Street                                    **FILED UNDER SEAL**
Unit 28, Room 2325
Wilmington, DE 19801

Re:   *Guardant Health, Inc. v. Foundation Medicine Inc.*,
      <u>C.A. No. 17-1616-LPS-CJB,</u>
      *Guardant Health, Inc. v. Personal Genome Diagnostics,*
      <u>C.A. No. 17-1623-LPS-CJB</u>

Dear Judge Burke:

　　Defendants' letter is long on inflammatory rhetoric and short on ripe disputes. Over the last five months, Guardant has fielded dozens of questions and collected numerous batches of documents. The goal posts seem to move with each answer and each document. The current complaints center on the "bodiless" emails issue that arose only recently. However, as Guardant informed Defendants before they filed their letter, after much digging, Guardant ███████ ████████████████████████████████████████████ is in the process of making a production. Moreover, Guardant's subpoena to Google to recover such emails is also still in process, with Google notifying the parties on November 18 that it may produce the emails in question. Because there has been no "loss," Defendants' premature motion should be denied. Defendants' requests for relief would be presented in an orderly fashion if they had simply waited for these two additional productions, which should not be far away.

　　The Defendants' inventorship allegation—that is the basis for the last five months of discovery about 2012 emails—is not supported by their own inequitable conduct experts. Dr. Metzker testified his opinion was focused on whether Dr. Eltoukhy was an inventor. Yet, when asked if "Dr. Eltoukhy participate[d] in the conception or the development of the inventions of the claims-in-suit while at Illumina," he testified that he "[had] not done that analysis." Ex. A at 414:2–11. He also conceded that he could not identify any idea in the claims-in-suit contributed by Dr. Eltoukhy. Ex. A at 327:17–328:1. Defendants rely primarily on slides created by Dr. Frank Steemers ("Steemers Slides"). Defendants' own experts admitted that the Steemers Slides contain nothing more than information that was already in the prior art. Ex. A at 303:17–22 (Metzker Depo.) ("Q. What did Dr. Eltoukhy add to Dr. Steemers' idea, according to you? A. I'm not sure he added anything new"); Ex. B at 441:7–442:6 (Harismendy Depo.) ("Q. Is there any aspect [of the Steemers slides] you identify as not being in the prior art? . . . A. I didn't do that analysis in particular. I did not analyze the Steemers slide in regard to prior art, necessarily"). It is black letter law that providing prior art does not give rise to joint inventorship. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004) ("A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception."). Thus, even if Dr. Eltoukhy had authored the Steemers slides himself—which he did not, it still would not show that he was a joint inventor.

　　Defendants' letter contains a flood of innuendo that ignores the record. On August 7, 2019, this Court ordered a narrowing of the Defendants' overreaching request for documents relating to

Dr. Eltoukhy's relationship with Guardant in 2012. D.I. 191.[1] After Defendants initially argued for the use of over 200 search terms, the parties agreed to a narrowed set of search limits. Guardant completed this production. However, Guardant was not aware that some documents were bodiless due to technical issues.

After Defendants raised the issue of potentially corrupted emails on September 21, 2019, Guardant immediately investigated the issue and subsequently hired a forensic specialist. These corrupted documents (the "bodiless emails") were from ▮▮▮▮▮▮. While they contain the date, sender, subject, and recipients of the emails, no body text is present. Guardant proceeded to have Dr. Eltoukhy's and Dr. Talasaz's computer forensically imaged and analyzed and joined PGDx in subpoenaing Google to retrieve the original records.

Redoubling its efforts, and to help fend off the latest allegations of malfeasance, Guardant has recently located ▮▮▮▮▮▮ Guardant informed the Defendants and asked if they would agree to stay this motion pending Guardant's production of this information to avoid or at least better crystalize the disputes.

Defendants make much of ▮▮▮▮▮▮. As explained to Defendants, ▮▮▮▮▮▮

Defendants also imply that Dr. Talasaz has been complicit in wrongdoing because corresponding versions of the emails containing the Steemers Slides were not located in ▮▮▮▮▮▮. The deletion of emails well before litigation is not evidence of nefarious intent. Guardant has searched ▮▮▮▮▮▮ using the agreed upon search limits and terms (which would have located the Steemers Slides) and did not find them. There is no evidence that Dr. Talasaz did anything untoward.

With respect to the Defendants' five requests, each one serves no purpose and/or imposes an undue burden on Guardant in light of the located backup and pending Google subpoena:

**Request 1: An order to download and preserve the entirety of Dr. Eltoukhy's and Dr. Talasaz's Gmail accounts**

As Guardant has repeatedly explained to Defendants, this request makes little sense. D.I. 280-1, Ex. 8 at 4. Guardant has searched ▮▮▮▮▮▮ using the agreed upon search terms and limits. The emails that could be located from these accounts have been reviewed and produced.

There is no basis for the Defendants to demand any further expansions of the searches that have already been conducted and agreed upon. Fact discovery ended on May 15, 2019. Further, there is no forensic benefit to exporting the entirety of Dr. Eltoukhy's and Dr. Talasaz's personal email correspondence, nor do the Defendants claim one. It would not show when any message was deleted or anything beyond what is presently available in the account. Thus, collecting the entirety of the private correspondence from Dr. Eltoukhy's and Dr. Talasaz's personal email

---

[1] All docket citations refer to Case No. 17-1616-LPS-CJB unless otherwise noted.

accounts presents an undue burden with no possible benefit.

### Request 2: Allow Defendants to inspect a corrupted archive file and full forensic images of Dr. Eltoukhy's hard drive

This request serves no purpose. Guardant has now located ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This information will be provided to the Defendants. There is no value in analyzing a corrupted archive file or image to recover these emails at this point. Additionally, Guardant already engaged a forensics analyst to determine if the files could have been recovered from Dr. Eltoukhy's hard drive. D.I. 280-1, Ex. 14. He determined that they could not, and his declaration was provided to Defendants. Defendants have not presented any evidence or suggestion that the forensic expert's analysis was somehow deficient or incomplete.

Dr. Eltoukhy's hard drive contains extremely valuable and sensitive trade secret and insider information that is irrelevant to this case but for which security is a paramount concern. Dr. Eltoukhy's hard drive also contains substantial amounts of privileged attorney client communications and work product information that is protected from discovery. Permitting the opposing parties' expert an unfiltered view of this information places an undue burden and security risk on Guardant and its CEO especially given the lack of relevance.

### Request 3: A list of the laptops Drs. Eltoukhy and Dr. Talasaz used since the company founding

All of the existing laptops used by Dr. Eltoukhy and Dr. Talasaz at Guardant with data intact have been forensically imaged by Guardant. It is not clear why Defendants insist on a list of these computers or what relevance this has to the case. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Creating a complete and accurate list of every single computer ever used by Dr. Eltoukhy and Dr. Talasaz since 2011 provides no actionable or relevant information to the Defendants and places an undue and unwarranted burden on Guardant.

### Request 4: Production of all bodiless emails that satisfy Guardant's to/from and date limitations

Guardant intends to find and produce all of the Gmail account emails from the newly located backup. It is unclear why Defendants continue to insist that all bodiless (corrupted) emails be produced. After much back and forth, the parties agreed to balanced search terms and limits and producing every bodiless email (regardless of search term hits) would unreasonably require more document review and privilege logging.

### Request 5: Additional 4 hours of deposition time

Guardant's CEO Dr. Eltoukhy has already been deposed for 14 hours. The Defendants questioned Dr. Eltoukhy about his role in the conception of the '731, '822, and '743 patents (including the "Steemers Slides") at length. In addition, the Court has permitted another 3 hours of deposition regarding Dr. Eltoukhy's role with Guardant before he became an employee. Seventeen total hours of deposition is more than sufficient time. Given that there has been no "loss" of information, the additional three hours is more than sufficient to question Dr. Eltoukhy about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and his role with Guardant during the roughly one year before he became CEO. Defendants have not explained why they would need more time.

                                      Respectfully submitted,

                                      /s/ Michael J. Farnan

                                      Michael J. Farnan

cc: Counsel of Record (via E-Mail)